UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SCOTT SIDELL | : | |
| | : | |
| Plaintiff, | : | Docket No. |
| | : | |
| v. | : | |
| | : | |
| STRUCTURED SETTLEMENT INVESTMENTS, LP, PLAINTIFF FUNDING HOLDING, INC. (D/B/A "LAWCASH"), DENNIS SHIELDS, HARVEY HIRSCHFELD, RICHARD PALMA, and SCOTT YUCHT | : : : : : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendants. | : | May 8, 2008 |

## COMPLAINT

### INTRODUCTION

1. This case arises from the intentional and egregious invasion of Plaintiff's private e-mail communications by his former employers for the purpose of gaining an advantage in the ongoing employment dispute between the parties. In a blatant violation of Plaintiff's statutory and common law rights to privacy, Defendants invaded Plaintiff's private Yahoo e-mail account and, over a period of weeks following Plaintiff's termination, monitored his e-mail communications, including communications with Plaintiff's lawyers regarding the employment dispute.

2. The Defendants, who are in the business of providing funding for attorneys and litigants, are keenly aware of the importance of the attorney-client relationship, including privileged attorney-client communications. Nonetheless, Defendants knowingly engaged in this illegal conduct, wrongfully obtained and reviewed Plaintiff's private e-mails, and then utilized this private information, including privileged attorney-client communications, in

defending against Plaintiff's employment claims that are currently the subject of an ongoing arbitration. Plaintiff seeks damages for Defendants' violation of the 1968 Wiretap Act as amended by the Electronic Communications Protection Act (18 U.S.C. §2510) (First Cause of Action), the Stored Communications Act (18 U.S.C. §2701) (Second Cause of Action), Connecticut's Wiretapping and Electronic Surveillance Statute (General Statute § 54-41, *et seq.*) (Third Cause of Action), Connecticut General Statute §31-48d (Fourth Cause of Action), and Plaintiff's common law right to privacy (Fifth Cause of Action).

**PARTIES**

3.  Plaintiff Scott Sidell ("Sidell") is an individual who resides at 21 Old Mill Road, Westport, Connecticut 06880.

4.  Defendant Structured Settlement Investments, LP ("SSI") is a Delaware limited partnership, transacts business in Connecticut, and has a current place of business in Drexel Hill, Pennsylvania. At all relevant times, up to and including August 2007, SSI maintained offices at 12 South Main Street, Suite 302, in Norwalk, Connecticut. SSI purchases the rights to future structured litigation settlement payments and resells such rights to institutional investors. Until August 2007, Sidell was the CEO of SSI.

5.  Defendant Plaintiff Funding Holding, Inc. ("PFH") d/b/a LawCash is a Delaware corporation, transacts business in Connecticut, and has its principal place of business at 26 Court Street, Suite 1104, Brooklyn, New York 11242.

6.  Defendant Dennis Shields ("Shields") is the CEO of PFH and resides in New York.

7. Defendant Harvey Hirschfeld ("Hirschfeld") is the President of PFH and resides in New Jersey.

8. Defendant Richard Palma ("Palma") is PFH's Chief Operating Officer and resides in New York.

9. Defendant Scott Yucht ("Yucht") is the Chief Information Officer for LawCash and resides in New Jersey.

10. On or about September 6, 2006, PFH acquired SSI. PFH and SSI jointly and collectively do business as LawCash (the two entities are hereinafter collectively referred to as "LawCash") which is in the business of purchasing structured settlements, financing litigation attorneys, and funding plaintiffs in ongoing litigation.

11. PFH and SSI operate as alter egos of each other, as evidenced by the companies' lack of corporate formalities. In virtually all respects the companies were operated as one entity, including but not limited to the following:

   a. Shields, Hirschfeld and Palma approved all major decisions at SSI, including significant personnel and business decisions, and Sidell took orders directly from them following PFH's acquisition of SSI;

   b. PFH and SSI shared administrative personnel, including human resources staff;

   c. PFH and SSI used the same internal staff and payroll service; shared group benefits for health, dental, life and disability insurance; and

   d. PFH and SSI shared the same computer server, network and e-mail system, which Yucht administered.

12. PFH and SSI are liable to Sidell for the actions described more fully below under the alter ego doctrine.

**JURISDICTION**

13. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as causes of action cited herein arise under federal statutes, and pursuant to 28 U.S.C. § 1332(a)(2) as there is complete diversity of citizenship and the amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

14. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as Plaintiff's federal causes of action arise out of the same facts and circumstances as do the state causes of action.

15. This Court has jurisdiction pursuant to Conn. Gen. Stat. §§ 33-929(e), 33-929(f) and 52-59b because Defendants transact and/or do business in the State of Connecticut, and the claims herein arise out of contracts made in or to be performed in the State of Connecticut, or from business solicited in the State of Connecticut.

16. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to this claim occurred in Connecticut and Defendants are subject to personal jurisdiction in Connecticut.

**FACTS**

**The Employment Agreement**

17. On or about September 6, 2006, at the time PFH acquired SSI, Sidell was SSI's CEO. Eager to retain him in that capacity, the Defendants offered Sidell an enhanced compensation package.

18. As a result of negotiations, Sidell executed an Employment Agreement (the "Employment Agreement"), that provided, among other things, (a) a term of employment from September 6, 2006 through July 28, 2009; (b) a substantial annual base salary; (c) a significant retention bonus ("Retention Bonus") paid out in twelve (12) quarterly installments; and (d) both a performance (or "maintenance") and incentive bonus.

19. In a further effort to entice Sidell to accept the CEO position, Hirschfeld on behalf of LawCash, executed an addendum to the Employment Agreement (the "Addendum") increasing the agreed upon salary and accelerating the Retention Bonus to a lump sum payment made upon the acquisition of SSI.

20. The Employment Agreement (¶7(d)) further required that, unless terminated for cause, LawCash was required to provide Sidell (a) at least ninety (90) days' prior written notice; (b) one (1) year's severance pay; (c) all other amounts Sidell had earned as of the time of his termination; and (d) reimbursement for all expenses accrued prior to this termination. In order to find "cause" under the Employment Agreement, Sidell's conduct had to meet a high threshold, such as fraud, criminal conduct, breach of fiduciary duty or knowledge of misrepresentation by the sellers of SSI.

21. The Employment Agreement (¶18) also provided that any dispute arising under its provisions must be pursued in arbitration.

**Defendants' Termination of Sidell**

22. Upon information and belief, during the summer of 2007, LawCash determined that the business was less profitable than originally anticipated and it closed SSI's Connecticut office to cut costs.

5

23. On or about August 24, 2007, LawCash called a meeting with Sidell in Greenwich, Connecticut to discuss Sidell's status now that his office was being closed. The meeting was attended by Hirschfeld, Palma, and Sidell.

24. At this meeting, Hirschfeld and Palma informed Sidell that they were terminating his employment effective immediately. In an effort to avoid their obligations to Sidell under the Employment Agreement, Defendants claimed they were terminating him for cause, citing disappointment with the recent performance of SSI and certain limited critiques of Sidell's success as CEO. Even if true (which they are not), none of the reasons cited for termination constituted "Cause" under the Employment Agreement. Subsequent to this discussion, a letter crafted by LawCash's attorneys was provided to Sidell in which Defendants offered wholly different reasons for Sidell's termination which were also false, pretextual and did not otherwise constitute valid grounds for Cause under the Employment Agreement.

**Unauthorized Access of Sidell's Personal E-Mails**

25. At all relevant times during his employment, Sidell had two e-mail accounts, a personal Yahoo e-mail account and an Outlook e-mail account, the latter of which was provided by his employer and which Sidell used for business purposes. At no time had Sidell authorized any of the Defendants to access his personal Yahoo e-mail account, nor did he provide them with his password.

26. Following the August 24, 2007 meeting, and the abrupt and groundless termination of his employment, Sidell returned to his office to collect his personal effects before the office locks were changed. In the rush to gather his belongings, he did not turn

6

off the computer in his office. Apparently, his personal Yahoo e-mail account remained active on the office desktop computer, so that his Yahoo account could be accessed without entering his password for a period of up to two weeks.

27. Unaware that his Yahoo e-mail account remained accessible in his former office in Connecticut, Sidell continued to use his personal Yahoo e-mail following his termination, to communicate with, among others, attorneys concerning his termination. He did so from home using his personal computer.

28. In some of these e-mails, Sidell refuted in detail the allegations made by LawCash and discussed his legal strategy concerning any potential arbitration and/or employment claims involving LawCash and/or some or all of the Defendants. Unbeknownst to Sidell, the Defendants were monitoring Sidell's personal e-mail account, and intercepting, opening and reading Sidell's e-mail communications, including his personal, privileged attorney-client communications.

29. Upon information and belief, shortly after Sidell's termination, Yucht, LawCash's Chief Information Officer, searched the computer Sidell had been using and discovered he could access Sidell's Yahoo personal e-mail account.

30. Upon information and belief, Yucht then examined Sidell's Yahoo account from LawCash's Brooklyn office and remotely monitored ongoing e-mail communications to and from Sidell, despite the fact that Sidell was using his Yahoo account from his home.

31. Upon information and belief, Yucht searched the stored e-mails in the inbox and outbox of Sidell's Yahoo account, which at this time totaled approximately 10,440 e-mails.

32. Upon information and belief, Yucht did so at the direction of, and with the knowledge and approval of, the other Defendants.

33. Upon information and belief, Defendants monitored, intercepted and/or read Sidell's e-mails for as long as his Yahoo account remained accessible from the desktop computer, a period of approximately two weeks.

34. During this period, Sidell sent approximately 127 e-mails and received approximately 304 personal e-mails (i.e. not including spam).

35. Upon information and belief, the Defendants reviewed a total of 10,871 e-mails, including both the 431 e-mails sent or received by Sidell in this period and the 10,440 e-mails in Sidell's inbox and outbox.

36. Upon information and belief, Yucht forwarded e-mails to LawCash, including but not limited to Shields, Palma and Hirschfeld, and saved e-mails on LawCash's server, which presumably were accessible by any LawCash employee.

37. Upon information and belief, the Defendants then circulated the e-mails to their attorneys, Zukerman, Gore & Brandeis, with offices at 875 Third Avenue, New York, New York (in the Arbitration, Zukerman, Gore & Brandeis represent both SSI and PFC).

38. Upon information and belief, Attorney John K. Crossman, Attorney Frank C. Welzer, counsel for the Defendants, as well as others in their firm, Zukerman, Gore & Brandeis, LLP received and reviewed Sidell's personal e-mails, including those which they knew to be attorney-client communications.

## The Arbitration

39. On or about October 18, 2007, Sidell, though counsel, filed a Statement of Claim and Demand for Arbitration with JAMS Dispute Resolution ("JAMS") in New York City, pursuant to the terms of the Employment Agreement. The Respondents in the Arbitration include LawCash, Sheilds, Hirschfeld and Palma as well as related entities and individuals.

40. On or about November 14, 2007, LawCash and the above Defendants, through counsel, filed a Counterclaim, Response and Affirmative Defenses with JAMS.

41. In their Counterclaim, LawCash and the above Defendants asserted additional, heretofore unstated grounds to dismiss Sidell for Cause, including alleged breaches of Sidell's fiduciary duties to SSI; none of these alleged fiduciary breaches had been discussed with Sidell previously.

42. Upon information and belief, LawCash and the above Defendants cited these additional grounds for termination in response to the strategies and information they had illegally pilfered from Sidell's personal e-mails.

43. It became apparent during the discovery process in the Arbitration that following Sidell's termination, the Defendants had been monitoring Sidell's personal Yahoo account.

44. Once counsel for Sidell became aware of the unauthorized access of Sidell's Yahoo account, they immediately sought return of all printed and electronically stored copies of the e-mails. Despite demand, Defendants initially refused to return the personal e-mails. Even after the Arbitrator issued an order requiring their return, Defendants returned only

some of the e-mails, many in redacted form, and stated that they had destroyed copies of e-mails.

45. To date, Defendants and their counsel have refused to identify precisely how many e-mails were intercepted and/or reviewed; the individuals who reviewed the e-mails; or to identify or produce the e-mails that did not involve Sidell's Arbitration counsel. Defendants have apparently taken the position that the e-mails are not the proper subject of the Arbitration, do not need to respond to discovery requests pertaining to the e-mails, and the Arbitrator lacks authority to issue orders concerning the e-mails.

46. Recently, by letter dated March 14, 2008, Attorney Welzer, counsel for the Defendants, produced a retainer agreement (the "Retainer Agreement") dated August 28, 2007, between Sidell and a lawyer concerning a highly confidential action that is completely unrelated to the Defendants, the Arbitration or Sidell's employment. In so doing, Attorney Welzer acknowledged that "the [Retainer] agreement does not seem to relate to this arbitration." Upon information and belief, the Defendants and their legal counsel acquired this Agreement from their unauthorized access of Sidell's e-mail account.

47. As a result of Defendants' and their attorneys' improper and unauthorized interception and review of the e-mails, including privileged attorney-client communications, Sidell's position in the Arbitration has been compromised. The Arbitration has become more protracted and costly than it otherwise would have been.

**FIRST CAUSE OF ACTION:** Violations of the 1968 Wiretap Act as amended by the Electronic Communications Protection Act (18 U.S.C. §2510) as to all Defendants

48. Sidell repeats and alleges Paragraphs 1 through 47 of the Complaint as if fully set forth herein.

49. Sidell's Yahoo account e-mails are "electronic" communications within the meaning of 18 U.S.C. § 2510, *et seq.*

50. The Defendants intentionally intercepted or endeavored to intercept Sidell's electronic communications without authorization in violation of 18 U.S.C. § 2511.

51. The Defendants did so for the purpose of, inter alia, gaining an advantage in any employment claims by Sidell, including the Arbitration.

52. The Defendants intentionally disclosed said electronic communications to third parties, including but not limited to their employees, as well as their legal counsel, Zukerman, Gore & Brandeis. The purpose of these subsequent disclosures was to gain advantage over Sidell in the Arbitration.

53. Sidell has been harmed by the Defendants' unauthorized access of his Yahoo account, including but not limited to the fact that the Defendants and their attorneys have reviewed Sidell's privileged attorney-client communications and have gained advantage in the Arbitration.

54. Furthermore, Sidell has been harmed by the invasion of his privacy, particularly the privacy contemplated by the attorney-client relationship.

55. Accordingly, the Defendants have willfully and intentionally violated the Electronic Communications Protection Act (the "ECPA"), at 18 U.S.C. § 2510, et seq.

56. Pursuant to the ECPA, Sidell is entitled to compensatory damages as a result of the Defendants' actions.

57. Sidell is entitled to punitive damages as a result of the Defendants' willful and intentional violations of the ECPA.

58. Pursuant to the ECPA, Sidell is entitled to statutory damages as a result of the Defendants' actions, including but not limited to damages for each unauthorized access, transmission and/or review of each e-mail.

59. Pursuant to the ECPA, Sidell is entitled to the costs of this action together with reasonable attorneys' fees.

**SECOND CAUSE OF ACTION:** **Violations of the Stored Communications Act (18 U.S.C. §2701) as to all Defendants**

60. Sidell repeats and alleges Paragraphs 1 through 59 of the Complaint as if fully set forth herein.

61. Sidell's Yahoo account e-mails are "electronic" communications within the meaning of the Stored Communications Act (the "SCA") at 18 U.S.C. § 2701, *et seq.*

62. The Defendants intentionally accessed Sidell's personal stored electronic communications on his Yahoo account without authorization for the purpose of, inter alia, gaining an advantage in any employment claim by Sidell, including the Arbitration.

63. The Defendants intentionally disclosed said communications of the e-mails to third parties, including but not limited to their employees, as well as their legal counsel, Zukerman, Gore & Brandeis. The purpose of these subsequent disclosures was to gain advantage over Sidell in the Arbitration.

12

64. Sidell has been harmed by the Defendants' unauthorized access of his Yahoo account, including but not limited to the fact that the Defendants and their attorneys have reviewed Sidell's privileged attorney-client communications and have gained advantage in the Arbitration.

65. Furthermore, Sidell has been harmed by the invasion of his privacy, particularly the privacy contemplated by the attorney-client relationship. Accordingly, the Defendants have willfully and intentionally violated the SCA.

66. Pursuant to the SCA, Sidell is entitled to compensatory damages as a result of the Defendants' actions.

67. Sidell is entitled to punitive damages as a result of the Defendants' willful and intentional violations of the SCA.

68. Pursuant to the SCA, Sidell is entitled to statutory damages as a result of the Defendants' actions, including but not limited to damages for each unauthorized access, transmission and/or review of each e-mail.

69. Pursuant to the SCA, Sidell is entitled to the costs of this action together with reasonable attorneys' fees.

**THIRD CAUSE OF ACTION:** Violations of Connecticut's Wiretapping and Electronic Surveillance Statute (General Statute § 54-41, *et seq.*) as to all Defendants

70. Sidell repeats and alleges Paragraphs 1 through 69 of the Complaint as if fully set forth herein.

71. Sidell's Yahoo account e-mails are "wire" communications within the meaning of Connecticut General Statute § 54-41 *et seq.*, Connecticut's Wiretapping and Electronic Surveillance Statute.

72. The Defendants intentionally intercepted or endeavored to intercept Sidell's electronic communications without authorization in violation of General Statute § 54-41.

73. The Defendants did so for the purpose of, inter alia, gaining an advantage in any employment claims by Sidell, including the Arbitration.

74. The Defendants intentionally disclosed said electronic communications to third parties, including but not limited to their employees, as well as their legal counsel, Zukerman, Gore & Brandeis. The purpose of these subsequent disclosures was to gain advantage over Sidell in the Arbitration.

75. Sidell has been harmed by the Defendants' unauthorized access of his Yahoo account, including but not limited to the fact that the Defendants and their attorneys have reviewed Sidell's privileged attorney-client communications and have gained advantage in the Arbitration.

76. Accordingly, the Defendants have willfully and intentionally violated General Statute § 54-41.

77. Pursuant to General Statute § 54-41r, Sidell is entitled to compensatory damages as a result of the Defendants' actions.

78. Sidell is entitled to punitive damages as a result of the Defendants' violations of General Statute § 54-41r.

79. Pursuant to General Statute § 54-41r, Sidell is entitled to statutory damages as a result of the Defendants' actions, including but not limited to damages for each unauthorized access, transmission and/or review of each e-mail.

80. Pursuant to General Statute § 54-41r, Sidell is entitled to the costs of this action together with reasonable attorneys' fees.

**FOURTH CAUSE OF ACTION:** Violation of Connecticut General Statute §31-48d as to LawCash

81. Sidell repeats and alleges Paragraphs 1 through 80 of the Complaint as if fully set forth herein.

82. LawCash electronically monitored Sidell's personal electronic communications without authorization or prior notice.

83. At no time did LawCash, as Sidell's employer(s), post any written notice that such electronic monitoring would occur in violation of Connecticut General Statute §31-48d.

84. Sidell has been harmed by LawCash's unauthorized access of his Yahoo account, including but not limited to the fact that the Defendants and their attorneys have reviewed Sidell's privileged attorney-client communications and have gained advantage in the Arbitration.

85. Accordingly, LawCash has violated General Statute § 31-48d causing harm to Sidell and Sidell is entitled to damages.

**FIFTH CAUSE OF ACTION:** Invasion of Privacy as to all Defendants

86. Sidell repeats and alleges Paragraphs 1 through 85 of the Complaint as if fully set forth herein.

15

87. The Defendants have unreasonably intruded into Sidell's private affairs, including his personal, privileged communications with his attorneys.

88. Such actions are highly offensive to a reasonable person.

89. Sidell has been harmed by the Defendants' unauthorized access of his Yahoo account, including but not limited to the fact that the Defendants and their attorneys have reviewed Sidell's privileged attorney-client communications and have gained advantage in the Arbitration.

90. Sidell is entitled to damages as a result of the Defendants' invasion into his privacy.

**JURY TRIAL DEMANDED**

WHEREFORE, the Plaintiff Scott Sidell claims relief as follows:

**As To The First Cause of Action**

1. Compensatory damages pursuant to the ECPA.

2. Statutory damages in the amount of $10,000 for each e-mail accessed in violation of the ECPA;

3. Punitive damages pursuant to the ECPA;

4. Attorneys fees and costs pursuant to the ECPA

**As To The Second Cause of Action**

5. Compensatory damages pursuant to the SCA.

6. Statutory damages in the amount of at least $1,000 for each e-mail accessed in violation of the SCA;

7. Punitive damages pursuant to the SCA;

8. Attorneys fees and costs pursuant to the SCA;

**As To The Third Cause of Action**

9. Compensatory damages pursuant to Connecticut General Statute § 54-41r;

10. Statutory damages in the amount of $1,000 for each e-mail accessed in violation of the Connecticut General Statute § 54-41r;

11. Punitive damages pursuant to the Connecticut General Statute § 54-41r;

12. Attorneys fees and costs pursuant to Connecticut General Statute § 54-41r;

**As To The Fourth Cause of Action**

13. Compensatory damages for violations of Connecticut General Statue § 31-48d.

**As To The Fifth Cause of Action**

14. Compensatory damages for the Defendants' invasion of privacy and intrusions into Sidell's personal affairs;

**As To All Causes of Action**

15. An order requiring Defendants to return to plaintiffs all electronic communications, including e-mail, illegally obtained by it and to provide a list of all e-mails allegedly destroyed by defendants;

16. Other affirmative relief if necessary to prevent the Defendants' intrusions into Sidell's personal affairs; and

17. Any other relief that the Court deems reasonable and just.

THE PLAINTIFF

By: _____
David A. Slossberg [ct13116]
Russell A. Green [ct12976]
HURWITZ, SAGARIN, SLOSSBERG
& KNUFF, LLC
147 North Broad Street
Milford, CT 06460-0112
Telephone: 203-877-8000
Facsimile: 203-878-9800
Juris No. 26616