UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SCOTT SIDELL                                          :
                                                      :
                    Plaintiff,                        :    No. 3:08-cv-710 (VLB)
                                                      :
v.                                                    :
                                                      :
STRUCTURED SETTLEMENT INVESTMENTS,                    :
LP, PLAINTIFF FUNDING HOLDING, INC.                   :
(D/B/A "LAWCASH"), DENNIS SHIELDS,                    :
HARVEY HIRSCHFELD, RICHARD PALMA,                     :
and SCOTT YUCHT                                       :
                                                      :
                    Defendants.                       :    July 15, 2008

**<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION TO DISQUALIFY COUNSEL</u>**

The Plaintiff, Scott Sidell ("Sidell"), hereby moves to disqualify Attorney John Crossman and his firm, Zuckerman, Gore & Brandeis, LLP ("ZGB"), as counsel for Defendants, on the grounds that: (1) they are necessary witnesses to this action; (2) their future participation as counsel has been irreparably tainted because of their improper access to and/or use of Sidell's personal e-mails, including attorney-client e-mails, which forms the basis of this litigation; and (3) the interests of justice require their disqualification.

This case concerns the unauthorized access of Sidell's personal Yahoo e-mail account by Defendants following termination of his employment in violation of federal and state statutes as well as Sidell's common law right to privacy. Defendants illegally monitored Sidell's personal e-mails for a period of approximately two weeks, at a time when he was communicating with, among others, his lawyers regarding potential claims against Defendants for wrongful termination. Attorney Crossman and ZGB represented

the Defendants when they terminated Sidell's employment on August 24, 2007 and represent them in a pending arbitration concerning Sidell's termination. Defendants provided the illegally accessed personal e-mails to Attorney Crossman and ZGB, who in turn failed to promptly return them to Sidell pursuant to their ethical obligations as officers of the court. Indeed, it appears that counsel apparently used the e-mails and/or information therein to prepare defenses and counterclaims in the arbitration.

The instant complaint sets forth claims based on Defendants' unauthorized access to and use of Sidell's e-mails in violation of, inter alia, the Electronic Communications Protection Act, the Stored Communications Act, Connecticut's Wiretapping and Electronic Surveillance Statute, and Sidell's common law right to privacy, causes of action which require proof of access to Sidell's e-mails. Therefore, since defense counsel received the improperly accessed e-mails and subsequently used them to Sidell's detriment, it is clear that they are necessary witnesses in this action. In fact, Attorney Crossman and ZGB are potential defendants in this action. Further, the prior unethical conduct of Attorney Crossman and ZGB merit disqualification. For these reasons, and those stated below, Plaintiff's motion to disqualify should be granted.

## I. FACTS AND BACKGROUND

Sidell was the CEO for Structured Settlement Investments, LP when it was acquired by Plaintiff Funding Holding, Inc. d/b/a LawCash on September 6, 2006.[1] (Compl. ¶10, ¶17). Contemporaneous with this acquisition, Sidell executed an Employment Agreement (the "Employment Agreement") with Defendants that provided, among other things, that any dispute arising under its provisions must be pursued in Arbitration. (Compl. ¶18, ¶21).

---

[1] SSI and PFH are collectively referred to as LawCash.

2

On August 24, 2007, Defendants informed Sidell that they were terminating his employment effective immediately for reasons that were clearly fabrication. (Compl. ¶24). They fabricated reasons to justify the termination that were simply false. Notably, subsequent to termination, a letter from Attorney Crossman and ZGB was provided to Sidell in which Defendants offered wholly different reasons for Sidell's termination than those explained to Sidell. (Compl. ¶24).

### A. Unauthorized Access to Sidell's Personal E-Mails

During his employment, Sidell had two e-mail accounts, a personal Yahoo e-mail account and an Outlook e-mail account, the latter of which was provided by his employer and which Sidell used for business purposes. (Compl. ¶25). At no time had Sidell authorized any of the Defendants to access his personal Yahoo e-mail account, nor did he provide them with his password. (Compl. ¶25).

Following his termination, Sidell continued to use his personal Yahoo e-mail from his home, to communicate with, among others, attorneys concerning his termination; these communications were to both Attorney Richard Rabin of Akin, Gump, Strauss, Hauer & Feld, LLP and Attorney Richard Corenthal of Meyer, Suozzi, English & Klein, P.C. (Compl. ¶27) (See Affidavit of Richard S. Corenthal, Esq. ("Corenthal Aff."), ¶5; Exhibit A).

In some of these e-mails, Sidell refuted in detail the allegations made by LawCash, and discussed his legal strategy concerning any potential arbitration and/or employment claims against some or all of the Defendants. (Compl. ¶28; Corenthal Aff. ¶5). Unbeknownst to Sidell, the Defendants were monitoring Sidell's personal e-mail account by intercepting, opening, reading and keeping copies of Sidell's e-mail

3

communications, including his personal, privileged attorney-client e-mails. (Compl. ¶28).

Shortly after Sidell's termination, Scott Yucht ("Yucht"), LawCash's Chief Information Officer, searched the computer Sidell had been using at work and discovered he could access Sidell's Yahoo personal e-mail account. (Compl. ¶29; Corenthal Aff. ¶5, ¶6). Yucht then examined Sidell's Yahoo account from LawCash's Brooklyn office and remotely monitored ongoing e-mail communications to and from Sidell, despite the fact that Sidell was accessing his Yahoo account from his home. (Compl. ¶30).

### B. Arbitration

On October 18, 2007, Sidell, through Attorney Richard J. Rabin, filed a Statement of Claim and Demand for Arbitration with JAMS Dispute Resolution ("JAMS") in New York City, pursuant to the terms of the Employment Agreement. (Compl. ¶39). The Respondents in the Arbitration include Defendants SSI, PFH, Shields, Hirschfeld and Palma, as well as related entities and individuals. Id.

On November 14, 2007, LawCash and the above Defendants, through ZGB, filed a Counterclaim, Responses and Affirmative Defenses with JAMS. (Compl. ¶40). In their Counterclaim, the Defendants asserted new, additional grounds to dismiss Sidell for Cause, including alleged breaches of Sidell's fiduciary duties to SSI. (Compl. ¶41). The Counterclaim was the first instance in which many of these reasons for termination were raised.

### C. Use and Disclosure of Sidell's E-mails

The conduct of Attorney Crossman and ZGB in the Arbitration, including the allegations in the Counterclaim, made it increasingly apparent that they had information

gleaned from Sidell's personal Yahoo account. (Compl. ¶41, ¶42). In January 2008, during the discovery process in the Arbitration, the Defendants disclosed that they had monitored Sidell's personal Yahoo account in August 2007, producing e-mails between Sidell and his lawyers. (Corenthal Aff. ¶5). Not coincidentally, this disclosure occurred the same date the Arbitrator issued a Protective Order.[2] (Corenthal Aff. ¶ 5). Once Sidell's lawyers became aware of the unauthorized access of Sidell's Yahoo account, they immediately sought return of all printed and electronically stored copies of the e-mails. (Compl. ¶44; Corenthal Aff. ¶5). To date, Defendants and ZGB have refused to identify how many e-mails were intercepted and/or reviewed, the individuals who reviewed the e-mails, or to identify or produce any non-attorney-client e-mails.[3] (Compl. ¶45)

By letter dated March 14, 2008, Attorney Welzer produced a retainer agreement (the "Retainer Agreement") dated August 28, 2007 between Sidell and a lawyer concerning a highly confidential action that is completely unrelated to the Defendants, the Arbitration or Sidell's employment. (Compl. ¶46). In so doing, Attorney Welzer acknowledged that "the [Retainer] agreement does not seem to relate to this arbitration." (Compl. ¶46). It is clear that Attorney Welzer, ZGB and the Defendants acquired the

---

[2] It now appears that the Defendants and their lawyers deliberately waited until the issuance of a Protective Order in the Arbitration in an effort to shield their conduct. The Protective Order was issued on January 18, 2008 and the disclosure that Defendants had been monitoring Sidell's e-mail was made on January 18, 2008. The Defendants and their counsel have now raised the meritless claim in the Arbitration that the filing of this lawsuit violated the terms of the Protective Order in the Arbitration (after having stonewalled all of Sidell's discovery efforts in the Arbitration to obtain further information about Defendants' access to his Yahoo account).

[3] Following Defendants disclosure of their unauthorized access to Sidell's attorney-client e-mails, Attorney Corenthal propounded discovery seeking additional information concerning Defendants' access to Sidell's e-mails. (Corenthal Aff., ¶5). ZGB responded that the discovery requests were, inter alia, beyond the scope of the Arbitration and their clients had not consented to arbitrate the issue. To date, they have refused to produce further information or documents concerning the unauthorized access to Sidell's account.

5

Retainer Agreement from their unauthorized access of Sidell's e-mail account (although, to date, the Defendants have not produced the e-mail between Sidell and the attorney with whom he was communicating and to which the Retainer Agreement was attached).

E. **This Action and the PJR Action**

By Complaint dated May 9, 2008, Sidell instituted this action. The Complaint sets forth claims based on Defendants' violation of the Electronic Communications Protection Act (the "ECPA") (18 U.S.C. §2510), the Stored Communications Act (the "SCA") (18 U.S.C. §2701), Connecticut's Wiretapping and Electronic Surveillance Statute (General Statute § 54-41, *et seq.*), Connecticut General Statute §31-48d, and Sidell's common law right to privacy. Although General Statute §31-48d pertains only to employers, the remaining claims for violations of the ECPA, the SCA, Connecticut's Wiretapping Statue and Sidell's privacy pertain to anyone who accessed Sidell's e-mails without authorization.

Sidell also instituted a separate action in this court seeking a pre-judgment remedy, bearing civil action number 3:08 CV 717 (JBA) (the "PJR Action") against the Defendants, SSI and PFH, seeking to secure his likely recovery in the Arbitration. In the PJR Action, the defendants[4] filed a Counterclaim and supporting Declaration of Richard Palma (attached hereto as <u>Exhibit B</u>). Both the PJR Counterclaim and the Palma Declaration reference e-mails that Sidell sent on his personal Yahoo account, indicating that the Defendants and their attorneys have used information from Sidell's Yahoo

---

[4] Attorney Crossman and ZGB, as well as Attorney John Peloso and Attorney Alexander Pencu of Robinson & Cole, LLP are also representing the Defendants in the PJR Action.

6

account to defend and prosecute claims in both the Arbitration and the PJR action.[5] (See ¶¶35-36 of the Palma Declaration).

## II. LAW AND ARGUMENT

### A. Legal Standard

"The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir.2005). (Citation omitted). In exercising that authority, courts in this circuit "benefit from guidance offered by the American Bar Association (ABA) and state disciplinary rules." Id.; See also Blue Planet Software, Inc. v. Games Int'l, LLC, 331 F.Supp.2d 273, 275 (S.D.N.Y.2004). However, when a party moves for the disqualification of his adversary's attorney, "any doubt is to be resolved in favor of disqualification." Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir.1975).

Connecticut Rule of Professional Conduct 3.7(a) states: "(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where: (1) The testimony relates to an uncontested issue; (2) The testimony relates to the nature and value of legal services rendered in the case; or (3) Disqualification of the lawyer would work substantial hardship on the client."[6] The Connecticut Supreme Court has interpreted Rule 3.7 to require an attorney to withdraw "if he ... **reasonably foresees** that he will be called as a witness to testify on a **material** matter." State v. Crespo, 246 Conn. 665, 685, n. 14, cert. denied, 525 U.S. 1125 (1998), quoting State v. Webb, 238

---

[5] The Sidell e-mails referenced in the Counterclaim and the Palma Declaration have not been produced to Sidell.
[6] The Connecticut Rules of Professional Conduct apply to Attorney Crossman and ZGB's appearance in this action. However, as set forth in Section D, infra, counsel's prior conduct is in violation of both New York and Connecticut's ethical rules.

Conn. 389, 417 (1996). However, when an attorney fails to withdraw under such circumstances, "a court exercising its supervisory power can ... disqualify the attorney." Enquire Printing & Publishing Co. v. O'Reilly, 193 Conn. 370, 376 (1984).

"A finding of necessity takes into account such factors as the significance of the matters, weight of the testimony and the availability of other evidence." DeSarbo & Reichert, P.C. v. Cardow, 16 Conn. L. Rptr. 386, 387 (1996) (quoting Cooney & Bainer, P.C. v. Milum, 14 Conn. L. Rptr. 426, 428 (1995)). "There is a dual test for necessity. First the proposed testimony must be relevant and material. Second, it must be unobtainable elsewhere." Id. "The party moving to disqualify counsel bears the burden of proof." Id.

Additionally, it is axiomatic that lawyers are disqualified from representing clients when they have unwaivable conflicts of interest, as their ability to appear as an advocate is materially limited by the lawyer's own self-interest and responsibility to others, and when the interests of justice demand such disqualification. Rule 1.7b of the Rules of Professional Conduct states in relevant part that "A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests." This type of conflict of interest is illustrated by Rule 1.9, which provides that "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."

The Comments to Rule 1.7 provide that "Loyalty to a client is also impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client." Further, "the critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." Id. In addition, the lawyers' own interests must not be permitted to have an adverse effect on his representation of a client. "For example, **if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice.**" Id. (Emphasis added). The actions of Defendants' counsel, which were so egregious in this case, clearly dictate disqualification under any of these guiding principles.

B. **Attorney Crossman, Attorney Welzer and possibly others at ZGB Are Necessary Witnesses in this Action**

### 1. Attorney Crossman, Attorney Welzer and Others at ZGB Would Provide Material Evidence that Cannot be Obtained From Any Other Source.

Attorney Crossman, Attorney Welzer and others at ZGB are necessary witnesses in this action concerning how and when the information in Sidell's e-mails, particularly his communications with his attorneys, was accessed and how the information was used. There is little doubt that some or all of Defendants accessed Sidell's personal Yahoo account, reviewed Sidell's e-mails and subsequently produced the e-mails to their attorneys. Only Attorney Crossman, Attorney Welzer and others at ZGB can address

9

how and when they received the e-mails or information contained therein, and what they did with the information.

For example, it appears that ZGB had information gleaned from Sidell's Yahoo account when they framed their Counterclaims in the Arbitration in November 2007. There are no other witnesses than the lawyers at ZGB who can testify as to what e-mails were received, how they were received, and when and to what use they were employed. There is no question that ZGB had Sidell's attorney-client e-mails when the e-mails were finally disclosed to Sidell in January 2008.

Only Attorney Crossman, Attorney Welzer and ZGB can provide testimony concerning how and when they received the e-mails and/or information contained therein. The likely testimony of Attorney Crossman, Attorney Welzer and others at ZGB would include: 1) whether they acquired the e-mails electronically or as printouts; 2) whether they knew their clients were accessing Sidell's e-mails at the time or learned about it later; 3) whether they assisted, directed or otherwise procured the Defendants' access to or searching of Sidell's e-mails; and 4) what they did with the e-mails and/or information contained therein when received (since Sidell is aware that ZGB did not immediately notify Sidell's counsel that they were in possession of the e-mails). Thus, Attorney Crossman and others at ZGB are necessary witnesses because their testimony is relevant, material and is unobtainable elsewhere.

Further, as addressed more fully below, Attorney Crossman and ZGB, upon receipt of Sidell's e-mail communications, failed to act in accordance with their ethical obligations as dictated by both New York and Connecticut rules of conduct. Not only did they not immediately return the communications, but they also failed to even notify

opposing counsel so that the issue could be resolved before the arbitrator or some other neutral party. See Section D, infra. Having failed to isolate themselves from their clients' illegal conduct, Attorney Crossman and ZGB are now necessary witnesses in this case. In fact, not only did they fail to guard against the inadvertent use of confidential information, it appears that they deliberately concealed their clients' conduct as well as their own possession of attorney-client communications and intentionally used information in the e-mails to their advantage in the Arbitration.

Finally, even if the Defendants attempt to claim that Sidell's e-mails or information contained therein is protected from discovery in this action by the attorney-client privilege – a privilege neither the Defendants nor their counsel recognized regarding Sidell's communications – these arguments have no merit. Much of the testimony that would be elicited from counsel would not concern attorney-client communications; it would concern conduct, specifically counsel's access to and use of Sidell's e-mails. Even if the e-mails, or information therein, were provided to ZGB directly by the Defendants in the form of a communication, the attorney-client privilege would not apply to how and when the information was received.

Furthermore, to the extent any communications between Defendants and counsel were made for the purpose of seeking legal advice, these communications would not be protected under the attorney-client privilege. Communications in furtherance of contemplated or ongoing criminal or fraudulent conduct are excepted from the attorney-client privilege. Communications made to an attorney are excluded from the privilege where the party invoking the crime-fraud exception demonstrates that there is probable cause to believe that the particular communication or work-product was intended to

facilitate or conceal ongoing or contemplated criminal or fraudulent activity. In re Richard Roe, Inc., 68 F.3d 38, 40 (2d Cir.1995). Such an exception exists because "[a]lthough there is a societal interest in enabling clients to get sound legal advice, there is no such interest when the communications or advice are intended to further the commission of a crime or fraud." Id. Accordingly, there is no reason that Attorney Crossman and ZGB should not be witnesses in this action, even if they attempt to shield their conduct by the attorney-client privilege.

### 2. None of the Exceptions Articulated Under Rule 3.7 Apply

Where the testimony related to a contested issue does not concern the value of legal services and would not impose substantial hardship, the exceptions listed under Connecticut Rule of Professional Conduct 3.7(a) do not apply. The anticipated testimony of Attorney Crossman and others at ZGB does not relate to an uncontested issue; rather, the testimony directly affects the damages to which Sidell may be entitled and, as more fully set forth below, may implicate the attorneys as defendants themselves. Rule 3.7(a)(1). Further, the anticipated testimony does not relate to the nature and value of legal services rendered in the case. Rule 3.7(a)(2).

Finally, disqualification of Attorney Crossman and ZGB will not work substantial hardship on the Defendants.[7] This action was only recently commenced and the Defendants have yet to file a responsive pleading. See Command Electric, Inc. v. Manousos, 19 Conn.L.Rptr. 296 (1997) (noting that because the motion to disqualify was filed early in the proceedings any hardship in securing new counsel would be "minimal").

---

[7] The allegations in the Complaint referencing the actions of Attorney Crossman, Attorney Welzer and ZGB clearly put them on notice that they are necessary witnesses in this action. This is a relevant factor in evaluating motions for disqualification. See Comment to Rule of Professional Conduct 3.7.

The parties have not completed the parties' planning conference. Moreover, the Defendants are also represented by Attorney Peloso and Attorney Pencu of Robinson & Cole, who are more than capable of continuing to represent the Defendants without interruption.

In contrast, if Attorney Crossman and ZGB are allowed to continue to serve as counsel in this case, it will undermine the "public's interest in the scrupulous administration of justice" and result in severe prejudice to Sidell. Bergeron v. Macklen, 225 Conn. 391, 397-98 (1993). Attorney Crossman and ZGB possess information from the e-mails at issue in this case, including privileged confidential attorney-client communications, yet they made no effort to immunize themselves from this information by promptly notifying opposing counsel. To the contrary, they concealed their, and Defendants', possession of this information until after entry of the Protective Order in the Arbitration in the transparent attempt to avoid liability for the unauthorized access to Sidell's e-mails. Therefore, to permit Attorney Crossman and ZGB to continue in their representation of the Defendants would undermine any notions of justice and equity.

### 3. Attorney Crossman and Others at ZGB are Potential Defendants.

Furthermore, depending on information obtained during discovery, Attorney Crossman, Attorney Welzer and others at ZGB may be potential defendants in this action. This information can be developed only based on their testimony concerning when and how they accessed Sidell's e-mails and to what use they put the information therein.

Title I of the ECPA creates civil liability for anyone who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any . . . electronic communication." 18 U.S.C. § 2511(1)(a). Similarly, Connecticut's

Wiretapping statute, which mirrors the ECPA, provides liability for anyone who procures any other person to intercept, disclose or use electronic communications. General Statute §54-41r. The SCA provides a private cause of action for intentional unauthorized access to stored electronic communications. Finally, Attorney Crossman and ZGB are potential defendants in the claim for the intentional invasion into Sidell's privacy, including his privileged communications with his attorneys.[8]

## C. The Prior Conduct of Attorney Crossman, Attorney Welzer and ZGB Warrants Disqualification

### 1. Counsel's Ability To Appear In This Action Has Been Irreparably Tainted.

Having obtained and utilized plaintiff's private e-mails, Attorney Crossman and ZGB cannot serve as counsel for the Defendants. They have learned private, confidential information about plaintiff and advice sought from and provided by his lawyers that creates an unwaivable conflict of interest, much like the situation where a lawyer learns confidential information in a former representation and then seeks to represent a new client against the old one. See Rule 1.9. Moreover, given counsels' outrageous conduct, their personal interests in avoiding liability compromises their ability to represent clients in this action without subrogating the interests of the parties to their own.

### 2. The Interests Of Justice Require Disqualification

Based on prior conduct alone, Attorney Crossman, Attorney Welzer and ZGB should be disqualified as a matter of justice and fairness. By itself, their failure to promptly disclose their possession of attorney-client communications merits

---

[8] Even if counsel is not directly liable for the cited causes of action, depending on facts developed during discovery, they may be liable for aiding and abetting such illegal or tortious activity. Calore v. Town of Stratford, 2001 WL 58364, superior court (January 8, 2001, Melville, J.) (attached as Exhibit C); See also Fink v. Magner, 988 F. Supp. 70, 72 (D. Conn. 1997).

disqualification in this action. Moreover, because of the blatant violation of Plaintiff's rights, simple justice demands that these lawyers be disqualified, so that plaintiff not be subject to the lawyers who were integrally involved in the violation of his privacy.

New York and Connecticut rules of professional conduct support disqualification of ZGB in this case. Given that the Arbitration was and is pending in New York and ZGB is based in New York, we focus our initial argument on New York's rules of ethics.

Under New York law confidential attorney-client communications, including those by e-mail, are protected from disclosure and are inadmissible as evidence. CPLR §§ 4503, 4548. In <u>Galison v. Greenberg</u>, 5 Misc.3d 1025(A), 799 N.Y.S.2d 160 (2004), the Court looked to the opinions of the Association of the Bar of the City of New York, and the New York County Lawyers Association, and noted that both organizations conclude that:

> **when receiving a communication or e-mail which the lawyer knows or should reasonably know contains privileged material, the attorney is obligated to 'promptly notify the sending attorney' thereof, to refrain from further review of the communication, and to return or destroy it if so requested.** Counsel should be aware of their obligations in these circumstances, and promptly adhere to them, in order to avoid sanctions.

(Emphasis added.) (Attached as <u>Exhibit D</u>).

Formal Opinion 2003-04 of the Association of the Bar of the City of New York (the ABCNY) states that:

> **A lawyer who receives a misdirected communication containing confidences or secrets should promptly notify the sender and refrain from further reading or listening to the communication, and should follow the sender's directions regarding destruction or return of the communication.** However, if there is a legal dispute before a tribunal and the receiving attorney believes in good faith that the communication appropriately may be retained and used, the receiving attorney may submit the communication for in camera consideration by the tribunal as to its disposition. Additionally, the receiving attorney is not prohibited as an ethical matter from using the information to which the attorney

was exposed before knowing or having reason to know the communication was inadvertently sent. **However, it is essential - as an ethical matter - that the receiving attorney promptly notify the sending attorney of the disclosure in order to give the sending attorney a reasonable opportunity to promptly take whatever steps he or she feels are necessary.**

(Emphasis added.) (A copy of this Opinion is attached as Exhibit E).

Connecticut's rules of conduct provide similar obligations. Connecticut Rule of Professional Conduct 3.4 provides that a "lawyer shall not (1) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act. . . "

Rule 4.4 (b) provides that "A lawyer who receives a document relating to the representation of the lawyer's client and knows or reasonably should know that the document was inadvertently sent shall promptly notify the sender." The commentary to this provision states that "If a lawyer knows or reasonably should know that such a document was sent inadvertently, then this Rule requires the lawyer to promptly notify the sender in order to permit that person to take protective measures. For purposes of this Rule, 'document' includes e-mail or other electronic modes of transmission subject to being read or put into readable form."

As with New York's Rules of Ethics, pursuant to Connecticut Rules of Professional Conduct 3.4 and 4.4, Attorney Crossman and ZGB had an obligation to promptly notify Sidell's attorneys that they were in possession of privileged attorney-client communications. Regardless of which forum's ethical rules are used, it is clear that Attorney Crossman and ZGB's conduct violates the rules of professional conduct and warrants their disqualification from this action.

The Defendants intentionally accessed Sidell's personal, private e-mails, including privileged communications between Sidell and his lawyers immediately following Sidell's termination on August 24, 2007, and continued to do so for as long as they could, possibly for as long as two weeks. These e-mails contained detailed strategy concerning Sidell's rights and remedies following his termination.

At some point Attorney Crossman and ZGB acquired the privileged communications, though clearly neither they nor their clients can make any claim that the e-mails were somehow "misdirected" to them. Since Attorney Crossman and ZGB issued Sidell's termination letter dated August 24, 2007, there is good reason to believe that Attorney Crossman and ZGB acquired the e-mails contemporaneously with Defendants' unauthorized access to Sidell's Yahoo account in late August 2007. This belief is buttressed by the fact that the Counterclaims, dated November 14, 2007, which were also filed by Attorney Crossman and ZGB, appear premised, at least in part, on facts gleaned from unauthorized access to Sidell's personal e-mails.

It is undisputed that Attorney Crossman and ZGB did not return any attorney-client e-mails to Sidell until they produced discovery in the Arbitration on January 18, 2008; not coincidentally, on the same date that the Arbitrator issued the Protective Order. (See Corenthal Aff. ¶5). Despite Attorney Crossman and ZGB's clear ethical obligations to immediately return these privileged communications and make no use of them, they did neither. Whenever they came into possession of these e-mails, ZGB did not return the e-mails to Sidell's counsel or even notify Sidell's counsel that ZGB was in possession of privileged communications. Even if they believed that they were somehow entitled to keep and review the communications and/or that Sidell's privilege in the communications

17

had been waived, counsel was obligated to immediately notify Sidell's counsel so that Sidell could seek a ruling from the Arbitrator or some other authority and protect his privileged communications from further disclosure.

To the contrary, ZGB concealed their possession of these communications for possibly up to five months, deliberately waiting until after the issuance of the Protective Order so that they could attempt to immunize their conduct and that of their clients. In fact, Sidell's lawyers did not become aware of Defendants' possession of the e-mails until Sidell's lawyers received and reviewed the document production in January 2008. (See Corenthal Aff. ¶8). Moreover, it must be noted that the ethical obligations quoted above concern "misdirected" or "inadvertently disclosed" communications; this does not describe the present scenario, where the privileged communications were acquired by Defendants' intentional, unauthorized access to Sidell's personal e-mail account. This conduct is in direct contravention of the ethical obligations articulated above, and, by itself, supports disqualification.

## III. CONCLUSION

Based on the foregoing, plaintiff respectfully requests that his motion to disqualify be granted.

THE PLAINTIFF

By:_____
David A. Slossberg [ct13116]
Russell A. Green [ct12976]
HURWITZ, SAGARIN, SLOSSBERG
& KNUFF, LLC
147 North Broad Street
Milford, CT 06460-0112
Telephone: 203-877-8000
Facsimile: 203-878-9800
Juris No. 26616

18

## CERTIFICATE OF SERVICE

This is to certify that on July 15, 2008 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to all parties that are unable to accept electronic filing. Parties may access this filing through the Court's electronic system.

_____
Russell A. Green