## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

-------------------------------------------------------------- --- X
                                                    :
SCOTT SIDELL,                                       :       3:08CV710 (VLB)
                                                    :
                           Plaintiff,               :
                                                    :
v.                                                  :
                                                    :
STRUCTURED SETTLEMENT INVESTMENTS,                  :
LP, PLAINTIFF FUNDING HOLDING, INC.                 :
(D/B/A "LAWCASH"), DENNIS SHIELDS,                  :
HARVEY HIRSCHFELD, RICHARD PALMA, and               :
SCOTT YUCHT,                                        :
                                                    :
                           Defendants.              :       July 23, 2008
                                                    :
-------------------------------------------------------------- ---- X


## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO COMPEL ARBITRATION,
## OR ALTERNATIVELY, TO DISMISS

      Defendants respectfully submit this memorandum in support of their motion (1) to

compel arbitration of this action and dismiss, or alternatively, stay, this action in favor of

arbitration and (2) to dismiss the federal and Connecticut statutory claims set forth in the

complaint filed in this action.

      Over the eleven months since his termination for cause last August, plaintiff Scott

Sidell ("Sidell") has hired and fired a succession of lawyers, but the fact that Sidell is

presently represented by his third set of attorneys does not entitle him to ignore the

history of this dispute, including the existence of an ongoing arbitration covering the

same conduct, an arbitration that Sidell himself commenced. That arbitration takes

precedence over this later-filed action, and even if there were no first-filed arbitration,

1

Dockets.Justia.com

this action would be arbitrable under the compulsory arbitration clause which governs this dispute.  Additionally, Sidell filed this action in violation of an order made by the arbitrator in that arbitration -- an order which was known to Sidell's newest attorney before the instant case was filed.

## FACTS AND PROCEDURAL HISTORY

On October 18, 2007, days before the deadline that he had been given to return wrongfully withheld company property, Sidell commenced an arbitration (the "Arbitration") in New York City against virtually all of the respondents to this action concerning his employment agreement.  (Complaint in this action (the "Complaint") at ¶ 39). On November 14, 2007, respondents counterclaimed in that Arbitration.  (Complaint at ¶ 40).  That arbitration is ongoing, and includes allegations that immediately after Sidell was terminated for cause from his position at Structured Settlement Investments, LP ("SSI"), he returned to SSI's offices and without authorization used a company computer to transfer sensitive confidential company information, including customer lists and client financial data, to his own email account at Yahoo.com.

In the Arbitration, it has been disclosed that Sidell not only stole company information after he was fired, but he also left behind an easy-to-follow trail evidencing his theft.  Over the next few days after Sidell's theft, Scott Yucht, as an agent for SSI, followed that trail electronically and retrieved the evidence of the stolen information. That evidence was subsequently produced to Sidell as part of the Arbitration, and as such, pursuant to a Protective Order issued by the Arbitrator, it was protected from use outside the Arbitration.

2

## The Protective Order

On January 18, 2008, based on the parties' concerns regarding confidentiality of documents and information they were producing in the Arbitration, JAMS Arbitrator Jeanne C. Miller issued a Protective Order (the "Protective Order"), which states in pertinent part:

> All Discovery Material whether designated "Confidential" or not so designated, shall be used solely for prosecution or defense of the claims and counterclaims in this action [i.e., the arbitration] and shall not be used for any business, commercial, competitive, personal or other purpose.

(*See* Protective Order, ¶8 at 4, copy annexed as Exhibit A to the Declaration of John K. Crossman in Support of Defendants' Motion, sworn to on July 23, 2008 ("Crossman Decl."). The Protective Order also provided for sanctions "in the event of a proven willful violation… by any of the parties in this arbitration." (*See id.*, ¶13 at 5.)

The sole sources of information upon which Sidell relies in bringing this action is "Discovery Materials" under the Protective Order: In particular, Sidell relies upon an affidavit of defendant Scott Yucht produced in the Arbitration, and the emails referred to in the affidavit. Defendants have accordingly scheduled a motion for sanctions before the Arbitrator on the grounds that by using that information to bring this case, without obtaining or seeking relief from the Protective Order, Sidell has willfully violated the Protective Order.

## The Arbitration Agreement

The matters raised in the instant action fall within the arbitration clause of Sidell's employment agreement. Specifically, Sidell's employment agreement with SSI (the "Employment Agreement") contains the following arbitration provision, as follows:

3

> Any dispute, controversy, or claim arising out of or relating
> to this Agreement, or the breach, termination, or invalidity
> thereof whether sounding in contract or tort, and whether
> arising out of any statute, or otherwise, shall be settled by
> binding arbitration in New York City in accordance with
> the Rules of JAMS or its successor entity. . . .

(Employment Agreement, Section 18, at 8-9, copy annexed as Exhibit B to Crossman

Decl.).

## ARGUMENT

## I.

## THE SUBJECT OF THIS ACTION IS
## RELATED TO AN ONGOING
## ARBITRATION

### A.   Sidell Is Presently Seeking Relief In The Arbitration That Duplicates the Relief He Seeks in This Action.

In the Arbitration, Sidell is presently briefing his own motion to sanction

defendants, allegedly for the same use of certain e-mail messages as are at issue in the

instant case.   Among the forms of relief sought by Sidell is the dismissal with prejudice

of defendants' counterclaims.   (Letter, Russell Green, Esq., Counsel for Sidell, to

Arbitrator Jeanne Miller, dated June 19, 2008, at 1, annexed as Exh. C to Crossman

Decl.) (requesting that the Arbitrator grant permission to file a sanctions motion in which

"the relief we seek includes disqualification of Respondent's counsel . . . entry of default

judgment on the Counterclaims, and attorney's fees").   Permission for that sanctions

motion, and also for defendants' motion to sanction Sidell for violating the protective

order, was granted and is presently being briefed.   (Arbitrator Miller's Order No. 8,

annexed as Exh. D to Crossman Decl.).

Sidell cannot be permitted to have two bites at the same apple. Having commenced an arbitration, and having raised these very issues in that arbitration, Sidell cannot also pursue overlapping remedies for the identical conduct in this Action.

## B. The Parties To This Action Are The Same As The Parties In The Arbitration

### 1. Sidell Has Named All Defendants Except Yucht in the Arbitration

When Sidell commenced the Arbitration, he named as respondents substantially all of the parties to this action -- even though most of those parties were not signatories to the Employment Agreement. By offering to arbitrate with these non-signatories, Sidell offered to agree to arbitrate, which offer was accepted by those respondents, and therefore there is a binding agreement among those parties to arbitrate, which agreement is separate from and additional to the written agreement to arbitrate between Sidell and SSI, his employer.

### 2. As An Employee of SSI, Yucht Is Entitled To Enforce The Arbitration Provision Against Sidell

Defendant Scott Yucht was at all times acting as a disclosed agent of SSI in performing the acts alleged against him. (Affidavit of Scott Yucht dated November 14, 2007, ¶¶ 1-3 at 2, annexed as Exh. E to Crossman Decl.). Therefore, he is entitled to invoke the arbitration agreements between Sidell and SSI. "Courts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement." *Campaniello Imports Inc. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 668 (2d Cir. 1997), *quoting Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993) (internal citation and quotation marks omitted); *accord Zaks v. TES Franchising*, No. 3:01CV2266 (JBA), 2004 WL 1553611 at

*7. For example, in *Campaniello*, the Second Circuit held that claims against an individual employee that arose out of the relationship between plaintiff and that individual employee's employer, which relationship was the subject of a mandatory arbitration agreement, were also subject to mandatory arbitration. *Campaniello*, 117 F.3d at 668-69.

### 3. Sidell Is Estopped To Resist Arbitration Of Claims Against LawCash and the Individual Defendants

    *a) Sidell Has Alleged That The Defendants Have Acted In Concert with SSI, A Signatory To The Employment Agreement.*

The Complaint, like Sidell's Arbitration Demand, alleges that the defendants acted in concert to injure him. (Complaint ¶¶ 1-2; 11; 29-33); (Sidell's Arbitration Demand in JAMS Matter No. 1425000992, dated October 18, 2007, Exh. F to Crossman Decl., at 1-2 (introductory paragraphs); ¶¶ 13, 28, 31). In his Complaint in this Court, Sidell's "alter ego" allegations estop him from claiming that he need not arbitrate with these non-signatory defendants. Likewise, in Sidell's JAMS Arbitration Demand, he asserts that *all* of the defendants (other than defendant Scott Yucht) were "alter egos" of SSI. (Arbitration Demand ¶ 13). The Complaint in this action alleges that LawCash is SSI's alter ego but contains specific allegations regarding the actions of only Yucht and SSI. The Complaint's remaining allegations lump the defendants together and refer to them as a whole. Accordingly, Sidell "cannot now claim that the defendants have an insufficient relationship with" SSI to demand arbitration pursuant to his Employment Agreement. *Vertucci v. Orvis*, No. 3:05CV1307 (PCD), 2006 WL 1688078 at *5 (D. Conn. May 30, 2006), *citing Denney v. BDO Stillman, L.L.P.,* 412 F.3d 58 (2d Cir. 2005);

6

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999) (holding that the party attempting to resist arbitration was estopped from doing so because it had treated arguably non-signatory companies and their signatory assignees "as a single unit" in its complaint in a related lawsuit). Because Sidell both in the Arbitration and now in this case "completely intertwines his claims with all of the defendants, he is now estopped from denying that the arbitration clause in his agreement ... controls the claims against all of the defendants." *Vertucci*, 2006 WL 1688078 at *6 (internal citations omitted).

### b) *Sidell's Claims In This Action Are Intertwined With His Employment By SSI and His Employment Agreement.*

The claims against all of the defendants in this action are inextricably intertwined with the Employment Agreement to which Sidell is a signatory. Therefore, Sidell is also equitably estopped from refusing to arbitrate his claims with any of them. "Under Second Circuit law, claims against non-signatories to an arbitration agreement may also be subject to mandatory arbitration, where 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" *Gambardella v. Pentec, Inc.*, 218 F.Supp.2d 237, 241 (D. Conn. 2002), *quoting Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 404 (2d Cir. 2001) (internal quotations omitted); *accord JLM Indus., Inc. v. Stolt-Nielsen SA,* 387 F.3d 163, 177 (2d Cir. 2004) ("where the merits of an issue between the parties was bound up with a contract binding one party and containing an arbitration clause, the tight relatedness of the parties, contracts and controversies [i]s sufficient to estop the bound party from avoiding arbitration") (internal citations and quotations omitted).

**C. The JAMS Arbitrator Should Determine Arbitrability Under Sidell's Employment Agreement.**

As we discuss below, the Second Circuit, reviewing the applicable caselaw and the FAA, has recently confirmed that where, as here, a party agrees to arbitrate under particular rules, and where, as here, those rules provide that the arbitrator has jurisdiction to decide arbitrability, the party is bound to have the arbitrator decide "*all* disputes, including the question of arbitrability." *Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 211 (2d Cir. 2005) (emphasis in original). As a result, the Complaint should be dismissed, or in the alternative, stayed, pending the determination of arbitrability by JAMS.

1. The FAA Governs The Arbitration Provision in the Employment Agreement

The FAA governs the enforceability of arbitration agreements "involving commerce" between employers and employees other than transportation workers. *See Circuit City Stores, Inc., v. Adams*, 532 U.S. 105, 111-19 (2001); 9 U.S.C. §§ 1-2. The Supreme Court has consistently held that Congress intended to exercise its commerce power to the fullest extent when drafting the FAA to cover all contracts "involving commerce." *Id.* at 112, *citing Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995). The Supreme Court has also held that contracts "affecting commerce" are covered by the FAA. *Allied-Bruce Terminix Cos., Inc.*, 513 U.S. at 276-77. It is undisputed that Sidell's employment with SSI involved or affected interstate commerce. Accordingly, the Arbitration Agreement is governed by the FAA. *See* 9 U.S.C. §§ 1-2.

Section 2 of the FAA provides that FAA-covered agreements are "valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the

revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA thus requires federal courts to enforce such agreements by compelling arbitration of claims that are covered by a valid arbitration agreement. *See Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003) (per curium); *Genesco, Inc. v. T. Kakiuchi & Co.*, Ltd., 815 F.2d 840, 844 (2d. Cir. 1987). Section 3 of the FAA is a mandatory provision that "leaves no place for ... discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues to which an arbitration agreement has been signed." *Genesco*, 815 F.2d at 843-44, *quoting Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

Although the FAA provides for the staying of actions while the parties submit to arbitration, 9 U.S.C. § 3, "where *all* of the issues raised in the Complaint must be submitted to arbitration, the Court may *dismiss* an action..." *Filloramo v. NewAlliance Investments, Inc.*, No. 3:06CV01825 (AVC), 2007 WL 1206736 at *4 (D. Conn. April 23, 2007), *quoting Rubin v. Sona Int'l Corp.*, 457 F.Supp.2d 191, 198 (S.D.N.Y. 2006), *and citing Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis added). In addition, because Sidell violated an arbitrator's protective order when he filed this action, it should be dismissed rather than stayed, in order to permit the Arbitrator to determine if it should be refiled or not, and if so, with what restrictions.

2. Under the FAA and Related Caselaw, The Arbitrability of Sidell's Claims Should Be Determined By The JAMS Arbitration Panel

> Parties to an arbitration agreement may provide that the arbitrator, not the court, shall determine whether an issue is arbitrable. But the issue of arbitrability may only be referred to the arbitrator if there is *clear and unmistakable evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator.

9

*Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002), *quoting PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1198-99 (2d Cir. 1996), *quoting First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995) (internal citations and quotation marks omitted) (emphasis in original); *Congress Construction Co., Inc. v. Geer Woods, Inc.*, No. 3:05CV1665 (MRK), 2005 WL 3657933 at *1 (D. Conn. Dec. 29, 2005).

In *Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205 (2d Cir. 2005), the Second Circuit noted that Rule 7 of the AAA Commercial Arbitration Rules states with respect to jurisdiction that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Id.*, citing AAA Rule R-7(a). The Second Circuit held that "when ... parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as *clear and unmistakable evidence* of the parties' intent to delegate such issues to an arbitrator." *Id.* at 208 (emphasis added) (applying Connecticut state law); *accord The Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 122-23 (2d Cir. 2003) (applying New York state law); *Paine Webber Inc. v. Bybyk*, 81 F.3d 1193, 1202 (2d Cir. 1996) (same).

Similarly, in *Congress Construction Co., Inc. v. Geer Woods, Inc.*, No. 3:05CV1665 (MRK), 2005 WL 3657933 (D. Conn. Dec. 29, 2005), this Court, citing *Contec*, entered judgment dismissing all claims on the grounds that under an arbitration agreement between the parties, the arbitrability of those claims was required to be decided by an arbitrator. The arbitration clause in Congress involved the AAA Construction Rules. 2005 WL 3657933 at *2. This Court found that Rule 9(a) of the Construction Rules states that the "arbitrator shall have the power to rule on his or her

own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Id.* (citations omitted). The Court also noted that both Connecticut and New York state law support the conclusion that incorporation of an arbitration rule such as Rule 9(a) into an arbitration agreement evidences the parties' intent to have an arbitrator determine questions of arbitrability. *Id.* at *4.

*Contec, The Shaw Group* and *Congress* require dismissal of all of Sidell's claims in this action because the arbitration provision in his Employment Agreement is likewise "clear and unmistakable evidence" of the intention to delegate arbitrability decisions to a JAMS arbitrator. The provision provides that "[a]ny dispute, controversy, or claim arising out of or relating to this Agreement, or the breach, termination, or invalidity thereof ... shall be settled by binding arbitration . . . *in accordance with the Rules of JAMS or its successor entity.*" (Employment Agreement, Section 18, at 8-9, Exh. B to Crossman Decl.) Notably, all JAMS rule sets contain the same language about the arbitrator determining questions of arbitrability. And in particular, the JAMS Comprehensive Arbitration Rules, pursuant to which the Arbitration is being conducted, vests the arbitrator with this authority:

> (c) Jurisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

(Rule No. 11(c), JAMS Comprehensive Arbitration Rules and Procedures (effective March 26, 2007), at 6-7, annexed as Exh. G to Crossman Decl.; see JAMS Commencement of Arbitration Notice, addressed to all parties to the Arbitration, dated

11

Nov. 1, 2007, at 1, annexed as Exh. H to Crossman Decl. (stating that "this arbitration shall be conducted in accordance with JAMS Comprehensive Arbitration Rules and Procedures").

Thus, SSI and Sidell agreed that the scope of the arbitration provision in the Employment Agreement they entered into would be determined by JAMS. Accordingly, this Court should dismiss the Complaint in its entirety. Alternatively, the Court should stay this action pending a determination by JAMS concerning the arbitrability of Sidell's claims in this action.

**D.  The Arbitration Provision Covers All Of The Claims In this Action**

1.  The Arbitration Provision, Which Covers All Claims "Relating To" Sidell's Employment Agreement And Its Termination, Covers All The Claims In This Action

The Second Circuit has held that under the FAA,

> arbitration agreements are favored in the law and are to be broadly construed. An order to arbitrate should not be denied unless it can be said that the arbitration clause is not susceptible of a reasonable interpretation covering the asserted dispute. In short, doubts should be resolved in favor of coverage.

*Coudert v. Paine Webber Jackson & Curtis*, 705 F.2d 78, 81 (2d Cir. 1983), *citing United Steelworkers of Am. v. Warrior & Gulf Navigation*, 363 U.S. 574, 582-83 (1960); *accord Fleck v. E.F. Hutton Group, Inc.*, 891 F.2d 1047, 1050 (2d Cir. 1989).

To determine the arbitrability of claims under an arbitration provision, the court must classify the provision as either "broad" or "narrow". *See, e.g., Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001), *citing Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 49 (2d Cir. 2000). Where the arbitration provision at issue is broad, "it is presumptively applicable to disputes involving matters

12

going beyond the 'interpret[ation] or enforce[ment of] particular provisions' of the contract which contains the arbitration clause." *JLM Indus.*, 387 F.3d at 172, *quoting Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 77 (2d Cir. 1998).

The Second Circuit has held that an arbitration provision that encompasses all claims and disputes "arising out of" and "relating to" the agreement within which it is found is "broad". *See, e.g., Paramedics Electromedicina*, 369 F.3d 645, 649 (2d. Cir. 2004) (broad arbitration provision read, "any controversy, claim or dispute between the Parties arising out of or relating in any way to this Agreement"); *Vera*, 335 F.3d at 117 ("[a]ny dispute, claim, grievance or difference arising out of or relating to the Agreement"); *Louis Dreyfus Negoce S.A.*, 252 F.3d at 225 ("[a]ny dispute arising from the making, performance or termination of this Charter Party"); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir. 1987).

The arbitration provision at issue here contains language identical or similar to those contained in the provisions in these cases. It encompasses "any dispute, controversy or claim arising out of or relating to this Agreement, or the breach, termination or invalidity thereof…" (Employment Agreement, Section 18, at 8-9, Exh. B to Crossman Decl.) Moreover, the provision covers all such disputes, controversies or claims, "whether sounding in contract or tort", and "whether arising out of any statute." (*Id.*)

As a broad arbitration provision, the provision in Sidell's Employment Agreement "extends to collateral matters": (1) matters "going beyond" the "interpret[ation] and enforce[ment of] particular provisions" of the agreement in question, and (2) claims based on allegations that "touch matters covered by the parties' contracts". *JLM Indus.*,

387 F.3d at 172 (internal quotations and citations omitted), *citing Louis Dreyfus Negoce S.A.*, 252 F.3d at 224 and *Oldroyd*, 134 F.3d at 77.

All of Sidell's claims in this action are based on allegations that "touch matters covered" by the Employment Agreement. *JLM Indus*, 387 F.3d at 172. The gravamen of each of Sidell's claims is the alleged accessing of emails stored in his personal Yahoo account. Sidell alleges that the defendants "monitored his email ... communications with [hi]s lawyers *regarding the employment dispute*" between him and SSI. (Complaint ¶ 1) (emphasis added). It further alleges that in the email communications defendants monitored, "Sidell refuted in detail the allegations made by LawCash [regarding the basis for his termination] and discussed his legal strategy concerning any potential ... employment claims involving LawCash and/or some or all of the Defendants." (*Id.* ¶ 28.) The Complaint also alleges that the defendants "circulated" the emails they uncovered to defendants' counsel *in the Arbitration*. (*Id.* ¶ 37.)

Accordingly, all the claims in this action are subject to arbitration under the arbitration provision in Sidell's Employment Agreement.

### 2. Sidell's Allegations of Post-Termination Torts Are Subject to Arbitration Because They Arise Out Of His Termination

The arbitration provision here encompasses tort claims. Moreover, claims based on alleged torts against an employee committed by an employer *after* the employee's termination are collateral matters subject to arbitration if they arise out of the employment or termination of the employee. *Fleck v. E.F. Hutton Group, Inc.*, 891 F.2d 1047, 1051-52 (2d Cir. 1989) (alleged post-employment defamation concerned truth or falsity of events during employment and was arbitrable); *Hobley v. Kentucky Fried Chicken*, No. Civ. A. 04-0314(RMC), Civ.A. 04-0492(RMC), 2004 WL 3257063 at *3

14

(D.D.C. Oct. 26, 2004) (alleged post-termination false accusation of theft/defamation arbitrable because whether these stated a claim would depend on "numerous facts that arise out of [the plaintiff]'s employment relationship with" his employer); *Aspero v. Shearson Am. Express, Inc.*, 768 F.2d 106, 109 (6th Cir. 1985) (post-termination claim of defamation arbitrable because resolution depended on evaluation of work performance during employment); *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163, 1165-68 (8th Cir. 1984) (post-employment reports to brokerage agencies subject to arbitration since claims relied on handling of customer accounts during employment).

Of particular relevance here, an employee's claim for invasion of privacy based on her employer's investigative actions after her termination has been held subject to arbitration under an employment agreement. *See Swenson v. Management Recruiters Int'l, Inc.*, 858 F.2d 1304, 1310 (8th Cir. 1988), *cert. denied*, 493 U.S. 848 (1989). In *Swenson*, plaintiff alleged that after she had been terminated, employees of her former employer opened her personal, sealed mail and thereby invaded her privacy and violated a Minnesota statute. *Id.* at 1305. The Eighth Circuit found that the plaintiff's privacy claims "arose out of [plaintiff]'s employment as a manager" and "were within the parameters of the arbitration clause" in her employment agreement, which covered "all controversies, claims [and] disputes ... arising out of, or relating to this Agreement ... or the relations between the parties". *Id.* at 1310.

3.  Privacy-Based Tort and Statutory Claims Are Subject To Arbitration Under The FAA

Under the FAA and related caselaw, privacy-based tort claims may be compelled to arbitration. *See, e.g., Swenson*, 858 F.2d at 1309; *McCrea v. Drs. Copeland, Hyman & Shackman, P.A.*, 945 F.Supp. 879 (D. Md. 1996).

15

Moreover, "statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 1652 (1991); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337 (1987); *see also Oldroyd*, 134 F.3d at 77 ("[i]t is well settled that federal statutory claims can be the subject of arbitration, absent a contrary congressional intent"). Further, this Court has compelled arbitration of claims based on Connecticut statutes. *See, e.g., Amodio v. Blinder, Robinson & Co.*, 715 F.Supp. 32 (1989) (compelling arbitration of claims based on, *inter alia*, the Connecticut Uniform Securities Act, Conn. Gen. Stat. §§ 36-470, 36-472 and 36-498).

The Supreme Court has recognized that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628,105 S.Ct. 3346, 3354 (1985).

The arbitration clause in Sidell's employment agreement explicitly encompasses statutory claims.

Accordingly, for all of the foregoing reasons, the Court should order the parties to resolve the matters alleged in the pending Arbitration and this action should be dismissed, or in the alternative, stayed.

## II.

## SIDELL'S COMPLAINT FAILS TO
## STATE A CLAIM UNDER SEVERAL
## OF HIS ALLEGED THEORIES

### A. Legal Standard

"When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff." *McCrae Associates, LLC v. Universal Capital Management, Inc.*, No. 3:06CV1100 (AWT), 2008 WL 2036906 at *2 (D. Conn. May 13, 2008), *citing Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974). While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *McCrae Associates*, 2008 WL 2036906 at *2, *quoting Twombly,* --- U.S. at ---, 127 S.Ct. at 1965 (internal citations omitted). Unlike the situation when deciding in Point I (to compel arbitration), in reviewing a 12(b)(6) motion, the court is limited to "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *McCrae Associates*, 2008 WL 2036906 at *2, *quoting Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

**B. Sidell Fails to State A Claim For A Violation Of The Wiretap Act/Title I of the Electronic Communications Privacy Act**

The federal Wiretap Act of 1968, now Title I of the Electronic Communications Privacy Act (the "ECPA"), 18 U.S.C. § 2510 *et seq.*, provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, ... which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a) (West 2008). The Wiretap Act further provides with respect to electronic communications such as email, that an actionable violation occurs when a person "intentionally *intercepts*, endeavors to *intercept*, or procures any other person to *intercept* or endeavor to *intercept*, any wire, oral, or electronic communication ..." 18 U.S.C. § 2511 (emphasis added).

For an "interception" to occur under the Wiretap Act, there must be some "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device". 18 U.S.C. § 2510(4). In addition, for purposes of the Wiretap Act, the acquisition in question must occur during the time the communication is being transmitted. *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003) ("Every circuit court to have considered the matter has held that an 'intercept' under the ECPA [including Title I, the Wiretap Act] must occur contemporaneously with transmission"); *United States v. Steiger*, 318 F.3d 1039, 1048-49 (11th Cir. 2003); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *Steve Jackson Games, Inc. v. United States Secret Serv.*, 36 F.3d 457, 460-63 (5th Cir. 1994).

The Complaint fails to state a claim for a violation of the Wiretap Act because, with respect to any emails transmitted through his Yahoo email account, it contains only

a conclusory allegation that defendants "intercepted them." Federal district courts applying Fed. R. Civ. Proc. 12(b)(6) routinely dismiss Wiretap Act claims where, as here, the complaint at issue merely uses the words "intercept" or "interception", but fails to allege any fact that would support a claim that any defendant acquired the contents of electronic communications during the extraordinarily brief time it takes to transmit them. *See, e.g., Garcia v. Haskett*, No. C 05-3754 CW, 2006 WL 1821232 at *4 (N.D.Cal. June 30, 2006)(dismissing Wiretap Act claim where complaint alleged only that plaintiff's unread email was intercepted while "still in transit to Plaintiff's email's email box, i.e., accessed while in temporary, transit storage") (internal quotation marks omitted); *Eagle Investments Syst. Corp. v. Tamm*, 146 F.Supp.2d 105, 112 (D. Mass. 2001); *see also Steiger*, 318 F.3d at 1050 (11th Cir. 2003) ("[There] is only a narrow window during which an E-mail interception may occur – the seconds or milliseconds before which a newly composed message is saved to any temporary location following a send command"), *quoting* Jarrod J. White, *E-Mail@work.com: Employer Monitoring of Employee E-Mail*, 48 Ala. L. Rev. 1079, 1083 (1997) (internal quotations omitted).

Because Sidell alleges only that the emails were viewed *in* his email account, of necessity those emails already had been sent or received when viewed, since it is the completion of sending or receiving them that placed them in Sidell's account.

Finally, Sidell's conclusory allegations of interception are contradicted by his allegations concerning the manner in which defendants *accessed* emails from his Yahoo account, which *if true* (which defendants deny), might give rise to a claim under ECPA Title II, the Stored Communications Act. (*See* Complaint ¶¶ 31-33.) Sidell's Second Cause of Action is based on a violation of the Stored Communications Act. It is well-

settled that with respect to electronic communications such as email, claims under the Wiretap Act and those under the Stored Communications Act are mutually exclusive. "[A]n electronic communication may *either* be intercepted and actionable under the Wiretap Act [Title I], *or* acquired while in electronic storage and actionable under the [Stored Communications Act, Title II], *but not both*." *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 450 (C.D. Cal. 2007), *citing Konop* 302 F.3d at 877 (emphasis added).

## C. Sidell Fails to State A Claim For A Violation Of The Stored Communications Act

The Stored Communications Act (Title II of the ECPA), 18 U.S.C. § 2701, which creates civil liability for one who "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system... ." 18 U.S.C. § 2701(a).

The Complaint fails to state a claim for a violation of the Stored Communications Act because it alleges that Sidell authorized the defendants to access and review his emails. The Complaint alleges that "his personal Yahoo e-mail account remained active on" an "office desktop computer, *so that his Yahoo account could be accessed* without entering his password for ... two weeks." (Complaint ¶ 26.) The "two weeks" to which the Complaint refers is the period of time for which Yahoo account users can authorize anyone using a particular computer to access their email accounts by affirmatively clicking a box on Yahoo's interface agreeing to make such an authorization. Sidell has

thus alleged that he authorized an SSI office desktop computer to access his Yahoo email account for two weeks. There is no allegation that the computer in question was assigned to Sidell (and indeed it was not). Accordingly, it is clear that such authorization extended to SSI and its employees.

**D. Sidell Fails to State A Claim Under Any Connecticut Statute**

1. Sidell Fails to State A Claim Under The Connecticut Wiretapping And Electronic Surveillance Statute

Sidell's claims under the Connecticut Wiretapping And Electronic Surveillance Statute (the "Connecticut Wiretap Act"), Conn. Gen. Stat. § 54-41a, *et seq.*, should be dismissed on the ground that the Statute does not cover the interception, accessing, disclosure or use of electronic communications, such as emails.

The Connecticut Wiretap Act provides a civil cause of action to "[a]ny person whose *wire* communication is intercepted, disclosed or used in violation of this chapter or of sections 53a-187 to 53a-189, inclusive." Conn. Gen. Stat. § 54-41r (West 2008) (emphasis added). The Act defines "wire communication" as:

> any communication made in whole or in part through the use of facilities for the transmission of communications *by* the aid of *telephone or telegraph* between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the transmission of intrastate, interstate or foreign communications.

Conn. Gen. Stat. § 54-41a(1) (emphasis added).

It is thus plain on the face of the Connecticut Wiretap Act that the Act does not apply to emails, the only form of communication at issue in this case. Moreover, there are no reported cases applying the Act to electronic communications.

The Complaint fails to allege that any "wire communication" (as defined by the Act), made or received by Sidell, was intercepted, disclosed or used. Accordingly, Sidell's claims under the Connecticut Wiretap Act should be dismissed.

2. Sidell Fails to State A Claim For A Violation Of Connecticut General Statute § 31-48d

The basis of Sidell's fourth cause of action, Connecticut General Statute § 31-48d, which prohibits certain forms of "electronic monitoring" by employers, of employees, in particular circumstances, does not reach post-termination monitoring of former employees. Section 31-48d defines "electronic monitoring" to mean "the collection of information on an employer's premises concerning employees' activities or communications by any means other than direct observation ..." Conn. Gen. Stat. § 31-48d(a)(3). The Section defines "employee" as "any person who *performs* services for an employer . . . if the employer *has* the right to control and direct the person..." Conn. Gen. Stat. § 31-48d(a)(2). Here, Sidell alleges that defendants began to monitor and access his Yahoo account *after* his termination. Accordingly, Sidell was not an employee at the relevant time, and his claim for the violation of Section 31-48d should be dismissed.

**CONCLUSION**

For all the foregoing reasons, defendants respectfully request that the Court compel arbitration of this action, and dismiss, or in the alternative, stay this action in favor of arbitration. In the event the Court determines that it will not do so, defendants respectfully request that this Court dismiss plaintiff Scott Sidell's federal and Connecticut statutory claims (his first, second, third and fourth causes of action) under FRCP 12(b)(6) for failure to state a claim.

Respectfully submitted,

DEFENDANTS

By:＿＿＿ /s/ John K. Crossman
John K. Crossman (ct25518)
ZUKERMAN GORE & BRANDEIS, LLP
875 Third Avenue
New York, New York 10022
Telephone: (212) 223-6700
Email:＿＿＿ jcrossman@zgbllp.com


ROBINSON & COLE LLP
John F.X. Peloso, Jr. (ct02447)
Alexander D. Pencu (ct26759)
695 East Main Street
P.O. Box 10305
Stamford, Connecticut 06904-2305
Telephone: (203) 462-7500
Facsimile: (203) 462-7599
Email:＿＿＿ jpeloso@rc.com
Email:＿＿＿ apencu@rc.com

## CERTIFICATE OF SERVICE

I hereby certify that, on July 23, 2008, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access the foregoing through the Court's system.

/s/ John K. Crossman
John K. Crossman (ct25518)