UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------------- X
:
SCOTT SIDELL, : No. 3:08-cv-710 (VLB)
:
                Plaintiff, :
:
v. :
:
STRUCTURED SETTLEMENT INVESTMENTS, :
LP, PLAINTIFF FUNDING HOLDING, INC. :
(D/B/A "LAWCASH"), DENNIS SHIELDS, :
HARVEY HIRSCHFELD, RICHARD PALMA, :
and SCOTT YUCHT, :
:
                Defendants. : August 11, 2008
:
---------------------------------------------------------------- X

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
FOR EXTENSION OF TIME TO CONDUCT DISCOVERY PRIOR TO
RESPONDING TO DEFENDANTS' MOTION TO DISMISS**

Defendants respectfully submit this memorandum of law in opposition to the motion of Scott Sidell for a ninety (90) day extension of time (the "Extension Motion") in order for Sidell to conduct discovery prior to responding to defendants' pending motion to dismiss the complaint and to compel arbitration of this dispute pursuant to the arbitration agreement that Sidell signed (the "Arbitration Motion"). Also pending before this Court are two other relevant motions: Sidell has moved this court to adopt a Rule 26 Order that Sidell's counsel prepared unilaterally, after refusing to meet with counsel for defendants (the "Unilateral Rule 26 Motion"). And conversely, defendants have moved this Court to compel Sidell's attorneys to actually participate in a Rule 26 Conference (the "Joint Rule 26 Motion"). There is also a motion by Sidell to attempt to disqualify

ORAL ARGUMENT REQUESTED

lead counsel (Zukerman Gore & Brandeis, LLP and its attorneys) (the "DQ Motion"). The DQ Motion is not relevant to the instant motion because it has not yet been ruled upon and certainly has not been granted; nevertheless, Sidell mentions the DQ Motion in his motion papers, so we include it for completeness.

## **OBJECTION AT THE OUTSET**

Even before reaching a discussion of the merits, this Court should deny the Extension Motion because Sidell's attorneys, prior to filing the motion, flatly refused to speak with lead defense counsel about the motion. Indeed, counsel for defendants tried on multiple occasions to have a telephone conversation with Sidell's attorneys about the motion, and although Sidell's attorneys at first promised to have such a call, they subsequently announced that they would not speak to defendants' attorneys about it. The email "back and forth" of defense counsel seeking a call, and Sidell's counsel refusing to participate, is annexed to the accompanying declaration of John Crossman as Exhibit A.

Refusing to speak to counsel does not constitute the "diligent efforts" required by Local Rule 7(b)(3). By refusing to talk with counsel, Sidell has unreasonably burdened this Court (and counsel) with yet another motion, and it is truly a burden because this motion could have been avoided entirely, because it is based upon mistakes about the facts and case history. Those mistakes are perhaps excusable, since Sidell's attorneys have newly replaced Sidell's prior two sets of attorneys, and some confusion between handoffs is understandable. However, what is not excusable is new counsel's stubborn refusal to talk to defense counsel, when all of these errors could have easily been pointed out, if Sidell's lawyers had simply agreed to take our call.

Unfortunately, human nature being what it is, if there are no consequences for a violation, rules like Rule 7(b)(3) will increasingly be ignored. And in fact, this is the *second* time that Sidell's attorneys have simply disregarded an obligation to confer in this case. For a discussion of the first such occasion, see our pending Joint Rule 26 Motion. If there are no consequences for this ostrich-like behavior, the problem will get worse. Accordingly, the motion should be denied on this basis.

## SUMMARY OF ARGUMENT

This motion should be denied for the following reasons:

1. **This case is subject to mandatory arbitration**, and defendants have moved this Court to compel arbitration. (See Arbitration Motion, on file).

2. **Sidell himself is arbitrating this issue.** Sidell's assertion that arbitration of this issue was somehow waived is fundamentally wrong; and is also belied by the fact that the issue of these emails is the subject of a pending motion in the Arbitration -- a motion that was *filed by Sidell*.

3. **Defendants do not need any discovery.** The supposedly open questions mentioned in their unsworn motion papers in fact have each been asked *and answered* during the course of the Arbitration – which has been ongoing for almost a year. (See discussion *infra* and accompanying Crossman Declaration).

4. **Detailed discovery on this issue has already been provided in the arbitration.** Thus, contrary to the allegations in, for example, paragraph 11 of Sidell's motion, defendants have already provided full disclosure of what emails were gathered, how they were gathered, and what was done with them.

Defendants have already established that no emails were redacted. Defendants have confirmed – under oath – that *all* emails obtained have been delivered to Sidell's prior counsel.

**5. There is no need for Discovery Prior To Determining the Motion to Compel Arbitration.** Even if there was reason to take discovery in connection with the motion to dismiss – and there is not – there still would be no need to have discovery prior to a ruling on the motion to compel arbitration. The only question Sidell associates with this question – "who, how why and when his personal emails were accessed and to what use they were put" – has already been answered in the Arbitration and there is nothing more to be said on the subject. (See Point 3 above, and Crossman Declaration). Accordingly, any question of discovery, if not rejected outright as it should be at this stage, should be deferred until after ruling on the motion to compel arbitration.

## ARGUMENT

**I. WHERE, AS HERE, A VALID AGREEMENT TO ARBITRATE EXISTS, THE COURT SHOULD COMPEL ARBITRATION AT ONCE, AND SHOULD TAKE NO FURTHER ACTION EXCEPT TO DISMISS OR STAY THE CASE.**

There is already pending before this Court a motion by defendants to compel arbitration. We respectfully incorporate by reference our memorandum in support of that motion and the declaration of John Crossman, with exhibits.

Sidell cannot dispute that there is a valid and binding agreement to arbitrate – indeed, it was Sidell almost a year ago who first invoked that arbitration agreement to commence the Arbitration, which is ongoing.

Sidell cannot evade the arbitrability of the claims in this action. There are three reasons.

### A. Sidell's Improper Use Of Email, and Claims Based Upon The Discovery Of That Improper Use, Are Clearly Arbitrable.

Sidell is wrong to say, as he does, that the "claims in this action clearly concern post-termination conduct unrelated to Sidell's employment." (Sidell Motion at ¶ 7). Rather, although the conduct was "post-termination," it was, almost entirely, *immediately* after his termination – a matter of minutes after his termination. That is how long it took for Sidell to return to defendants' office, where Sidell without authorization, in plain sight, in violation of company policy, from a company computer, in the company offices, sent improper emails to himself that contained valuable confidential company data and information that Sidell was not supposed to have, and which he was, in a word, stealing.

All of the conduct about which Sidell now complains arose from the instantaneous discovery of Sidell's illegal theft, and the efforts of the information systems executive, Scott Yucht, to stop, or at least identify, the extent of the damage.

These points are discussed in our memorandum in support of our motion to compel arbitration. As explained at pp. 12 to 16 of that memorandum, under the clear law for such agreements, Sidell's conduct (and any claim Sidell could bring about defendants' reaction to that conduct) is uniformly held to be within the ambit of the arbitration clause at issue.

### B. Sidell Is Presently Arbitrating The Email Issue In The Arbitration

Over and over again in these proceedings, Sidell speaks out of alternating sides of his mouth, depending upon what result he seeks. The present example is when Sidell tries

to assert that this dispute is not arbitrable, but when Sidell is simultaneously pressing a motion in the Arbitration for the same relief against substantially the same defendants (and disqualification of the same attorneys) based upon the same actions surrounding these same emails.

Sidell cannot have it both ways. Having himself commenced the arbitration, and having moved in that arbitration for sanctions (including disqualification of counsel and entry of judgment), Sidell cannot now be heard to say that this dispute is also to be decided – a second time – by this Court.

### C. There Has Been No "Reversal" By Defendants On This Issue

Sidell asserts that "a stunning, yet convenient, reversal" is to be found in defendants' insistence that these claims must be resolved in the Arbitration. (Sidell Motion at ¶ 7). But the three "facts" upon which Sidell relies to counter this supposed "reversal" are demonstrably wrong. (See Sidell Motion at ¶ 7). "Fact 1" was discussed in Point I.A, above, where it was shown that the alleged claims are by no means "unrelated to Sidell's employment." And "Fact 2" gives a seriously distorted view of the "e-mails at issue." Those emails were, almost entirely, ones sent, and then retrieved, on the day Sidell was fired. Although it now appears that a few additional emails were picked up over the next couple of days as part of the effort to do damage control. (See Yucht Affidavit, attached (without exhibits) as Exh. B to Crossman Decl., at ¶¶ 9-13), it is quite beyond dispute that the entire exercise of gathering this information was done by the company precisely because it had discovered Sidell in the act of corporate espionage, and was trying to protect itself from a disloyal former employee who was misusing his

knowledge gleaned from his just-terminated position. Finally, "Fact 3" incorrectly asserts that "Defendants have flatly refused all discovery on this issue in the Arbitration." That notion is simply incorrect, as we demonstrate in Argument Point II, which follows.

## II. SIDELL'S NEW ATTORNEYS ARE MISTAKEN IN THEIR BELIEF THAT THEY NEED DISCOVERY.

If only Sidell's attorneys were willing to have a frank conversation with counsel, it might have been possible to clarify the state of disclosure in the Arbitration. But with Sidell's lawyers determined not to speak with us, it appears that they are left with some misconceptions about how the case was conducted before they recently took over the file, and it looks as though only motion practice will persuade them about the true facts.

From the very first moment that the emails in question were produced in the arbitration, the respondents (defendants here) furnished detailed evidence of what they were, where and how they'd been obtained. See Yucht Affidavit, dated November 14, 2007, Exh. B to Crossman Decl., which was given to Sidell's then-attorneys simultaneously with the emails, and without them even having to ask for it. Thereafter, as the parties to the arbitration well know, in or about March 2008, questions were raised by Sidell's attorneys about the emails. Contrary to the "flat refusal" alleged now by Sidell, orders of the Arbitrator were issued concerning this topic, and answers were provided in the course of the arbitration. On February 20, 2008, in response to an Arbitrator's Order, counsel for respondents wrote to the Arbitrator and to Sidell's then-attorney about the emails. (See Exh. C to Crossman Decl.). On April 1, 2008, counsel for respondents wrote to Sidell's then-attorney and provided the last date that Sidell's account was found

open. (See Exh. D to Crossman Decl.). At the same time, counsel submitted two more sworn affidavits detailing how *all* of the emails obtained by respondents had been produced to Sidell's then-attorney. (See Rich Palma Affidavit and Frank Welzer Affidavit, also attached as Exh. D to Crossman Decl.). And once the Hurwitz Sagarin firm appeared as replacement counsel, we advised them that contrary to their impression, we had not redacted any of the emails. We also reiterated for them the fact that *all* of the emails had been returned. (See Welzer letter to Russell Green dated April 30, 2008, attached as Exh. E to Crossman Decl.; and Green letter to Welzer dated April 25, 2008, attached as Exh. F to Crossman Decl.).

You cannot get blood from a stone. Even though Sidell manifestly *would like* to discover that there are actually more emails at issue, *in fact* all of the emails obtained have already been delivered to Sidell's counsel. None have been redacted. None now exist at counsel's office, and none exist with the client, all as demonstrated by sworn statements. There is, in short, nothing more to learn about what was collected, when it was collected, or where it went. All of that information is in the hands of Sidell's attorneys. As a result, discovery is unwarranted. *Herrera-Mendoza v. Byrne*, 2007 WL 1613299, at * 1 (June 1, 2007 D. Conn.)(copy attached to Crossman Decl. as Exh. G).

The fact that Sidell's attorneys apparently wish they could find more does not change the simple fact that it has already been a topic of discovery in the Arbitration, and as determined in that proceeding, "more" does not exist.

## **CONCLUSION**

For all of the foregoing reasons, this Court should deny the motion for extension of time to take discovery.

Respectfully submitted,

DEFENDANTS

By: /s/ John K. Crossman
John K. Crossman (ct25518)
ZUKERMAN GORE & BRANDEIS, LLP
875 Third Avenue
New York, New York 10022
Telephone: (212) 223-6700
Email: jcrossman@zgbllp.com

ROBINSON & COLE LLP
John F.X. Peloso, Jr. (ct02447)
Alexander D. Pencu (ct26759)
695 East Main Street
P.O. Box 10305
Stamford, Connecticut 06904-2305
Telephone: (203) 462-7500
Facsimile: (203) 462-7599
Email: jpeloso@rc.com
Email: apencu@rc.com

## CERTIFICATE OF SERVICE

I hereby certify that, on August 11, 2008, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access the foregoing through the Court's system.

/s/ John K. Crossman
John K. Crossman (ct25518)