UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SCOTT SIDELL | : | |
| | : | |
| Plaintiff, | : | 3:08-cv-710 (VLB) |
| | : | |
| v. | : | |
| | : | |
| STRUCTURED SETTLEMENT INVESTMENTS, | : | |
| LP, PLAINTIFF FUNDING HOLDING, INC. | : | |
| (D/B/A "LAWCASH"), DENNIS SHIELDS, | : | |
| HARVEY HIRSCHFELD, RICHARD PALMA, | : | |
| and SCOTT YUCHT | : | |
| | : | |
| Defendants. | : | AUGUST 14, 2008 |

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINITFF'S MOTION TO DISQUALIFY COUNSEL**

Plaintiff, Scott Sidell ("Sidell"), hereby submits this Reply to Defendants' Opposition to Plaintiff's Motion to Disqualify Counsel to briefly respond to the arguments contained therein.

In their Opposition, Defendants rely on self-serving affidavits and rhetoric intended to distract the Court instead of directly refuting Sidell's argument that Attorney Crossman and ZGB should be disqualified. Notably, even their own statements highlight the basis upon which Sidell filed his motion – namely that counsel received improperly accessed emails, including privileged attorney-client communications, made no effort to notify opposing counsel, and unilaterally determined that any privilege had been waived. Further, Attorney Crossman's Affidavit demonstrates that he and his firm are the only witnesses who may

testify concerning what was done with the Sidell's e-mails, some of which were clearly privileged, and how they were used against Sidell in the arbitration.

Standing alone, counsel's role as necessary witnesses warrants disqualification, but it is further warranted here where not only are they necessary witnesses to this action, but also they should be disqualified for violating the ethical rules in their treatment of Sidell's privileged communications. As such, their further involvement in this action will clearly taint the proceedings and warrants disqualification. See <u>MMR/Wallace Power & Industrial, Inc. v. Thames Associates</u>, 764 F. Supp. 712 (D. Conn., 1991) (Burns, J.). For these reasons, and those set forth below and in Sidell's moving brief, this Court should grant Sidell's Motion to Disqualify Counsel.

## ARGUMENT

1. Defendants contend that Sidell has failed to satisfy the high threshold for disqualifying counsel by arguing that the basis for Sidell's motion is based on little more than "sheer speculation." (Def. Br. at 13). Notably, however, the affidavit submitted in support of Defendants' opposition belies their own argument, as it contains statements that, in fact, support Sidell's basis for seeking this relief from the Court. It is well settled that when a party moves for the disqualification of his adversary's attorney, "any doubt is to be resolved in favor of disqualification." <u>Hull v. Celanese Corp.</u>, 513 F.2d 568, 571 (2d Cir.1975). Attorney Crossman's Affidavit removes all doubt that he and his firm should be disqualified.

First, Defendants contend that the allegations in Sidell's complaint are unfounded, yet, Attorney Crossman's own affidavit substantiates Sidell's claims and, in fact, resolves several of Sidell's claims that were made "upon information and belief." Attorney Crossman attested to the following pertinent facts:

- That after Sidell's termination, Yucht, LawCash's Chief Information Officer, remotely accessed Plaintiff's personal email account (Crossman Aff. ¶ 13);

- That Yucht continued to monitor Sidell's personal email account in the weeks following his termination (Crossman Aff. ¶¶ 17, 23);

- That those emails included privileged communications between Sidell and his attorneys, and both Defendants and their attorneys were aware of this fact (Crossman Aff. ¶ 18);

- That Defendants subsequently forwarded Sidell's emails to their attorneys, who reviewed the emails (Crossman Aff. ¶ 16); and

- That Defendants failed to notify Sidell that these emails were in their possession until after the entry of a protective order in the arbitration (Crossman Aff. ¶ 28-29).

Attorney Crossman's affidavit is also informative on other fronts. For instance, Defendants aver that it was not until February 5, 2008 that counsel became aware that there were post-termination date emails among the Sidell's attorney-client emails. (Crossman Aff. ¶¶ 23, 30) (noting in paragraph 23 that "[i]t is important to remember that at this point in time, and for some months after, we were unaware of there being any emails . . . that were prepared after Sidell's termination.").[1] Yet, this statement defies logic where they knew the date of

---

[1] Attorney Crossman represents that upon discovering that there were post-termination emails, they agreed to return all copies of the emails and then, conveniently, to "delete any electronic copies so that [defense counsel] would have no danger of access to them." (Crossman Aff. ¶ 30). Apparently counsel's cautious treatment of the e-mails and their concern about their own inadvertent access, justified deleting the e-mails but not providing timely notice to Plaintiff's counsel about their possession of the e-mails.

3

termination – indeed, defense counsel authored the termination letter. Moreover, all emails contain time and date stamps, and Attorney Crossman does not indicate that Defendants produced the emails to counsel in any redacted form.[2]

Attorney Crossman's Affidavit is almost as important for what it does not say. Notably missing from Attorney Crossman's Affidavit is when he received the Sidell's attorney-client e-mails and what involvement, if any, he had in procuring the e-mails – all critical facts requiring exploration. Equally troubling, Attorney Crossman makes no mention of his access to and/or use of Sidell's other (non-attorney-client) e-mails which also forms the basis of this litigation. While part of Plaintiff's claims and Motion to Disqualify focus on the unauthorized access to and use of his attorney-client e-mails, Sidell's claims extend to all unauthorized access to all of his e-mails. In reality, however, defense counsel has refused to produce <u>any</u> of Sidell's emails other than redacted copies of those that were clearly privileged. Thus, Attorney Crossman and his firm are necessary witnesses concerning their involvement with Plaintiff's other, non-privileged e-mails.

Second, Attorney Crossman's affidavit highlights the inherent problem of an attorney receiving emails that were illegally accessed by his or her client – he or she is the only witness who could testify as to how those emails were used. Attorney Crossman explains at length how the emails were "quarantined," how they "researched" the issue, and ultimately concluded that these emails were

---

[2] If, in fact, defense counsel did receive these emails with the dates redacted, that would be material to Plaintiff's claim against Defendants and, again, only defense counsel could testify to this fact as the only individuals who received the emails.

4

"fair game." (Crossman Aff. ¶¶ 18, 20, 25). The fact that only Attorney Crossman and his firm can enlighten the Court as to what constitutes "fair game" is yet another reason why they are necessary witnesses.

Lastly, instead of addressing their conduct – most notably, their deliberate failure to notify Plaintiff that they were in possession of privileged emails – Defendants direct the Court's attention to a series of unrelated cases that address privilege issues under entirely different circumstances involving a company, rather than personal e-mail system. Defendants also fail to explain why, even if they had a good faith belief the e-mails were "fair game," they provided no notice to Sidell that they possessed such e-mails.

It is clear, under New York and Connecticut law, that an attorney must notify opposing counsel when they have accessed privileged information, whether inadvertent or otherwise, for "when receiving a communication or e-mail which the lawyer knows or should reasonably know contains privileged material, the attorney is obligated to 'promptly notify the sending attorney' thereof, to refrain from further review of the communication, and to return or destroy it if so requested." Galison v. Greenberg, 5 Misc.3d 1025(A), 799 N.Y.S.2d 160 (2004). See also Conn. Rule of Prof. Conduct 4.4 (b) ("A lawyer who receives a document relating to the representation of the lawyer's client and knows or reasonably should know that the document was inadvertently sent shall promptly notify the sender." (Emphasis added.).

Here, in direct contravention of these rules, Attorney Crossman and ZGB never notified opposing counsel, and made the unilateral determination that the

privilege had been waived. Accordingly, Defendants' attempts to rely on case law justifying the waiver of the privilege or to argue that the rule is somehow inapplicable because the emails were not "misdirected" defies logic.

2. Although not relevant to the Motion to Disqualify, Defendants' position that the claims in this action should be subject to Arbitration are also incorrect. Defendants now contend that the Arbitrator has jurisdiction over this matter after having taken the exact opposite position in the Arbitration.

The arbitration provision in Sidell's employment contract does not extend to the type of post-termination conduct by Defendants that is at the heart of this case. This issue will be more fully briefed in Plaintiff's opposition to Defendants' motion to dismiss, but suffice it to say that this is an insufficient basis upon which to deny Plaintiff's Motion to Disqualify, and amounts to little more than an attempt to distract the Court from the issue before it.

Defendants' current argument that arbitration of the claims are mandatory is entirely inconsistent with Defendants' position in the Arbitration itself and reveals their efforts to deny Sidell any forum in which to pursue his claims. As will be more fully discussed in Sidell's opposition to Defendants' Motion to Dismiss, Sidell's efforts to address these emails in the Arbitration have been stymied by Defendants on the grounds that the emails were irrelevant, that Defendants did not consent to arbitration and that the Arbitrator lacks jurisdiction over the issue.

By letter dated February 20, 2008, Attorney Crossman wrote to Arbitrator Miller and provided justification for his clients' unauthorized access to Sidell's

6

personal e-mail. Attorney Crossman reiterated that he would not provide any e-mails other than Sidell's attorney-client communications, despite Sidell's outstanding discovery requests and the clear directive of Arbitrator Miller to do so.

> For the avoidance of doubt, we have not returned, and would not agree voluntarily to return any emails *other than* the Sidell-to-Lawyer emails.
>
> * * *
>
> We know that the later kind of emails were not discussed at all in the prior conferences with you, and (quite properly) have not even been the subject of a request by Sidell's attorney to have them returned, but your order (we assume inadvertently) was written so broadly that they might have been deemed to have all emails fall within its scope.

(Attached as <u>Exhibit A</u>).

By letter dated February 25, 2008 Attorney Welzer of ZGB stated that the Respondents <u>would not respond</u> to Sidell's Interrogatories seeking discovery on the e-mails, claiming that JAMS lacks jurisdiction, as follows:

> We have concluded that we must object and that we are not at liberty to identify individuals for the following reasons:
>
> Your February 15, 2008 letter refers to criminal statutes. Under the circumstances we cannot advise our clients to voluntarily identify individuals. As you will understand, if individuals were to be identified, additional lawyers likely would become involved and separation objections may arise. This would, no doubt, add to the delays and expenses.
>
> <u>Your interrogatories raise issues outside of the Sidell-SSI agreement to arbitrate and our clients have not consented to arbitrate them. As a result, JAMS lacks jurisdiction.</u>
>
> The Interrogatories seek information that is <u>irrelevant to this arbitration</u>. You have voluntarily withdrawn three of the Interrogatories, but the remaining thirteen interrogatories <u>seek information that bears no relevance whatsoever to the dispute or your client's statement of claim</u>.
>
> * * *

7

> Under the circumstances, it is unfair for our clients to be burdened with the interrogatories and the associated costs. . . . Consequently it would benefit all involved to focus on the matters at issue.
>
> **<u>Your interrogatories are not authorized by the JAMS Employment Arbitration Rules and Procedures.</u>**

(Emphasis added) (Attached as <u>Exhibit B</u>)

By letter dated March 14, 2008, the Respondents again refused to produce supplemental discovery concerning the e-mail access, most notably based on the claim that the requests were outside of JAMS Employment Arbitration Rules and Procedures. Attorney Welzer wrote:

> As we stated in our January 11, 2008 written response to Sidell's first request for documents, we reiterate that our clients generally object to Sidell's requests to the extent that: (1) they seek to impose discovery obligations which are broader than, or inconsistent with, those required by the JAMS Employment Arbitration Rules and Procedures and law; . . .(3) they are unduly burdensome, overbroad, oppressive or seek information which is neither relevant to the claims or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence . .

(Attached as <u>Exhibit C</u>).

In sum, the Defendants have only produced a few limited and apparently redacted e-mails between Sidell and his lawyers, five months after their improper acquisition. In the Arbitration, the Defendants and ZGB have refused to comply with Sidell's discovery efforts concerning the unauthorized access to Sidell's e-mails. Specifically, Respondents refused to identify: 1) how many e-mails (whether between Sidell and his lawyers or not) were intercepted and/or reviewed; 2) the individuals who reviewed the e-mails; or 3) to identify or produce any non-attorney-client e-mails. As indicated by the correspondence discussed infra, the Respondents simply refused to produce any additional information or

8

documents concerning Sidell's e-mails and claim that JAMS lacked authority over the issue.

Defendants' true motivation is to completely foreclose Sidell's efforts to seek redress for their illegal access to his personal emails and improper intrusion into his privacy; they have not wanted it addressed in the arbitration, and now they seek to dismiss his action here. Accordingly, the argument is without merit, and amounts to little more than a "tactical" maneuver of which Defendants' speak.

In conclusion, Attorney Crossman's Affidavit supports disqualification of him and his firm based on their role as necessary witnesses and their prior unethical conduct. At the very least, Attorney Crossman's Affidavit warrants further discovery of the issues raised in the Plaintiff's Motion to Disqualify, including when he received the e-mails, his involvement in obtaining the e-mails, what other (non-attorney client e-mails he reviewed) and what efforts he made to determine whether any waiver occurred.

WHEREFORE for the reasons set forth herein, and more fully in Plaintiff's moving brief, Plaintiff's Motion to Disqualify Counsel should be granted.

THE PLAINTIFF
SCOTT SIDELL

By: _____
David A. Slossberg [ct13116]
Russell A. Green [ct14976]
Hurwitz, Sagarin, Slossberg & Knuff, LLC
147 North Broad Street
P.O. Box 112
Milford, CT 06460-0112
Tel: (203) 877-8000
Fax: (203) 878-9800
DSlossberg@hssklaw.com
RGreen@hssklaw.com

### CERTIFICATE OF SERVICE

This is to certify that on August 14, 2008 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to all parties that are unable to accept electronic filing. Parties may access this filing through the Court's electronic system.

_____
Russell A. Green