UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SCOTT SIDELL                              :
                                          :
                  Plaintiff,              :        No. 3:08-cv-710 (VLB)
                                          :
v.                                        :
                                          :
STRUCTURED SETTLEMENT                     :
INVESTMENTS, LP, PLAINTIFF FUNDING        :
HOLDING, INC. (D/B/A "LAWCASH"),          :
DENNIS SHIELDS, HARVEY HIRSCHFELD,        :
RICHARD PALMA, and SCOTT YUCHT            :
                                          :
                  Defendants.             :        October 29, 2008

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION, OR ALTERNATIVELY, TO DISMISS

Plaintiff, Scott Sidell (Plaintiff or "Sidell"), hereby submits this memorandum of law in opposition to the Defendants' Motion to Compel Arbitration, or Alternatively, to Dismiss, dated July 23, 2008 (the "Motion to Compel"). This action solely concerns the Defendants' unauthorized access to and use of Sidell's personal e-mails after his termination. These e-mails, including privileged attorney-client communications, were sent to and from Sidell's home. Because the claims in this action do not relate in any way to Sidell's employment or his employment agreement, they are not subject to compulsory arbitration.

Incredibly, the Defendants had previously admitted that the claims were not arbitrable. Indeed, during an arbitration related to the employment agreement, the Defendants stated on the record that (i) Sidell's privacy claims fall "outside the Sidell-SSI agreement to arbitrate,"

(ii) Defendants had "not consented to arbitrate them," and (iii) the arbitration "lacks jurisdiction" over the claims. To now do an about face before this honorable Court is disingenuous and should not be countenanced. The fact remains that Sidell's claims fall outside the agreement to arbitrate and this Court should decide the important issues of federal law and e-mail privacy now before it.

As more fully set forth below, the Motion to Compel should be denied because: 1) by the Defendants' own admission, the Defendants' post-termination conduct that is the basis for this action is not subject to the parties' agreement to arbitrate as the agreement does not require arbitration of all disputes between the parties and the claims do not involve significant aspects of the employment relationship; 2) the important public policies at issue in Sidell's claims should be addressed in federal court; 3) even if the claims in this action were subject to arbitration, which they are not, the Defendants have waived their right to arbitration based on their statements and conduct in the arbitration; 4) the Defendants' use of Sidell's e-mails has irreparably tainted any arbitration of this issue; and 5) the Defendants' arguments in support of dismissal are unsupported by case law and raise issues of fact that are not appropriate for resolution on a motion to dismiss.

## I.   BACKGROUND

### A.   Sidell's Employment and Termination

Sidell was the CEO for Structured Settlement Investments, LP when it was acquired by Plaintiff Funding Holding, Inc. d/b/a LawCash (the two entities are collectively referred to as "LawCash") on September 6, 2006. Contemporaneous with this acquisition, Sidell executed an Employment Agreement (the "Employment Agreement", attached as Exhibit A) providing, among other things, that "[a]ny dispute, controversy, or claim arising out of or relating to this Agreement, or the breach, termination or invalidity thereof whether sounding in contract or tort, and whether arising out of any statute, or otherwise, shall be settled by binding arbitration in New York City in accordance with the Rules of JAMS or its successor entity." (¶ 18).

On August 24, 2007, Defendants informed Sidell that they were terminating his employment effective immediately.   The Defendants wrongly claimed they were terminating Sidell for cause and that they did not owe Sidell notice or the compensation to which he was entitled under the Employment Agreement.

### B. Sidell's Personal Yahoo E-Mail Account

Following his termination, Sidell used his personal Yahoo e-mail account from his home in Connecticut to communicate with, among others, his personal attorneys concerning his termination. In some of these e-mails, Sidell refuted in detail the allegations made by his employers, and

discussed his legal strategy concerning any potential arbitration and/or employment claims against some or all of the Defendants. In other e-mails, Sidell communicated with lawyers concerning completely unrelated legal claims. Still other e-mails were personal, private communications with relatives, friends and associates.

Unbeknownst to Sidell, however, the Defendants were monitoring Sidell's personal e-mail account by intercepting, opening, reading and keeping copies of Sidell's e-mail communications, including his personal, privileged attorney-client e-mails. Shortly after Sidell's termination, Scott Yucht ("Yucht"), LawCash's Chief Information Officer, searched the computer Sidell had been using at work and allegedly discovered he could access Sidell's personal Yahoo e-mail account.[1]

C.    Arbitration

On October 18, 2007, Sidell filed a Statement of Claim and Demand for Arbitration ("Statement of Claim") with JAMS Dispute Resolution ("JAMS") in New York City, pursuant to the terms of the Employment Agreement. (A copy of the Statement of Claim is attached as Exhibit B; the JAMS proceeding is hereinafter referred to as the "Arbitration"). In his Statement of Claim, Sidell alleged, inter alia, that he was terminated without cause and, pursuant to the terms of the Employment Agreement, he was

---

[1] It is not disputed that Yucht reviewed and obtained e-mails from Sidell's personal Yahoo account, which were sent from Sidell's home after termination. However, the exact method by which Yucht accessed Sidell's account has not been divulged by Defendants. Defendants merely assert that Sidell's account was left 'open and running,' whatever that means. As set forth below, Defendants have thwarted Sidell's discovery efforts to determine the specifics of how the account was accessed, by whom, and how many and which e-mails were reviewed and/or kept.

4

entitled to ninety (90) days' written notice, severance pay and a bonus. The Statement of Claim asserted legal claims for breach of contract, violation of Connecticut's Wage and Hour Law (§31-72), tortious interference with contractual relations, replevin, unjust enrichment, and detrimental reliance.

## D. Disclosure of Defendants' Unauthorized Access to Sidell's E-mails

Although Sidell's e-mails were first accessed by Defendants in August 2007 and the Arbitration was commenced in October 2007, it was not until January 18, 2008, after the entry of a protective order (the "Protective Order") in the Arbitration, that Defendants finally revealed that they had monitored Sidell's personal Yahoo account, producing an Affidavit by Yucht and certain limited e-mails between Sidell and his lawyers.[2] The Defendants have admitted that this disclosure was withheld until the Arbitrator issued the Protective Order, even though Yucht's Affidavit was executed on November 14, 2007, some two months earlier.[3]

The limited e-mails that were produced are clearly attorney-client communications and appear to be redacted (several of the e-mails do not have headings which would typically identify the sender, recipient(s), dates

___

[2] This disclosure was made simply by producing, with many other documents, Yucht's Affidavit and the limited attorney-client emails. Defendants did not (and to date have not) produced any Sidell e-mails other than the limited, redacted attorney-client communications and they have refused to produce other e-mails in response to direct discovery requests from Sidell. The Defendants' objection stems from their position that, inter alia, JAMS lacks authority over this issue and because Defendants did not agree to arbitrate these claims. (See Section E below).

[3] As set forth in the pending Motion to Disqualify, Sidell maintains that defense counsel had an affirmative obligation to: 1) immediately notify Sidell that they possessed attorney-client communications; 2) make no use of the information therein; and, 3) either return the communications or permit Sidell to take necessary action to protect his privilege.

5

and subject). It now appears that the redactions were calculated to conceal when Defendants and/or their lawyers came into possession of the e-mails and/or who else may have received the e-mails.

Subsequently, the Defendants also produced a retainer agreement (the "Retainer Agreement") between Sidell and a lawyer concerning a legal matter that is completely unrelated to any of the Defendants or the Arbitration (see Exhibit G, discussed below). The Defendants did not state how they acquired the Retainer Agreement or provide any cover correspondence. However, since Sidell sent and received the Retainer Agreement electronically via his Yahoo account during the period when Yucht had access, the Defendants almost certainly acquired it from their access to Sidell's account.

E.     Defendants Thwart Sidell's Discovery and Reject JAMS Jurisdiction over the E-mail Issue

Once Sidell's lawyers became aware of the unauthorized access of Sidell's Yahoo account, they immediately demanded return of all printed and electronically stored copies of the e-mails. On February 5, 2008, the parties had a telephone conference with JAMS Arbitrator Jeanne Miller after which Arbitrator Miller issued Order #3 in which she noted "Mr. Correnthal [Sidell's counsel] stated that [Sidell] reserved all of his rights regarding information obtained from [Sidell's] personal Yahoo account." Arbitrator Miller also ordered defense counsel, Attorney Crossman, to "determine whether all attorney/client correspondence found in the Yahoo account has been returned to [Sidell]."

6

By letter dated February 7, 2008 (attached as Exhibit C), Attorney Crossman produced some limited copies of the previously produced, apparently redacted attorney-client e-mails. He also expressed his frustration with the "e-mail issue" and clearly sought to extinguish further inquiry concerning the issue, stating that "[R]ather than explore an issue that is, to say the least, collateral to the dispute at hand, even though we believe that Sidell's abandoning a computer with a live 'feed' from his account waived any privilege, we have decided to simply destroy our copies of the e-mails between Scott Sidell and Richard Rabin, Esq." This destruction was in clear violation of the Arbitrator's Order #3.

Sidell's counsel, Attorney Corenthal, promptly proffered discovery requests dated February 15, 2008, specifically directed to the unauthorized e-mail access. (See Claimant's Discovery Requests; attached as Exhibit D). The Discovery Requests sought information and documents specifically pertaining to Sidell's e-mails.

On February 15, 2008, Arbitrator Miller issued Order #4, directing production of attorney-client e-mails and noting that the Defendants/Respondents will respond to Sidell's supplemental discovery.

By letter dated February 25, 2008, Attorney Welzer asserted that the Defendants/Respondents would not respond to Sidell's Interrogatories seeking discovery on the e-mails, expressly stating that the e-mail issue was outside of the agreement to arbitrate, as follows:

> We have concluded that we must object and that we are not at liberty to identify individuals for the following reasons:

Your February 15, 2008 letter refers to criminal statutes. Under the circumstances we cannot advise our clients to voluntarily identify individuals. As you will understand, if individuals were to be identified, additional lawyers likely would become involved and separate objections may arise. This would, no doubt, add to the delays and expenses.

<u>Your interrogatories raise issues outside of the Sidell-SSI agreement to arbitrate and our clients have not consented to arbitrate them. As a result, JAMS lacks jurisdiction</u>.

The interrogatories seek information that is irrelevant to this arbitration. You have voluntarily withdrawn three of the interrogatories, but the remaining thirteen interrogatories seek information that bears no relevance whatsoever to the dispute or your client's statement of claim.

\*\*\*

Under the circumstances, it is unfair for our clients to be burdened with the interrogatories and the associated costs. . . Consequently it would benefit all involved to focus on the matters at issue.
<u>Your interrogatories are not authorized by the JAMS Employment Arbitration Rules and Procedures</u>.

(Attached as <u>Exhibit E</u>) (Emphasis added).

By letter dated February 20, 2008, Attorney Crossman wrote to Arbitrator Miller and provided justification for his clients' unauthorized access to Sidell's personal e-mail. Attorney Crossman reiterated that he would not provide any e-mails other than Sidell's attorney-client communications, despite Sidell's outstanding discovery requests and the clear directive of Arbitrator Miller.

For the avoidance of doubt, we have not returned, and would not agree voluntarily to return any emails *other than* the Sidell-to-Lawyer emails.

\* \* \*

We know that the later kind of emails were not discussed at all in the prior conferences with you, and (quite properly) have not even been the subject of a request by Sidell's attorney to have them returned, but your order (we assume inadvertently)

8

was written so broadly that they might have been deemed to have all emails fall within its scope.

(Attached as Exhibit F).

By letter dated February 27, 2008, Sidell's counsel, Attorney Corenthal, noted the Defendants' refusal to produce the e-mails and again requested that all e-mails be produced.

On March 7, Arbitrator Miller issued Order #6, again directing the Defendants to serve written responses to Sidell's supplemental document requests by the following week along with any responsive documents located and an estimate as to when the search for responsive documents will be completed.

By letter dated March 14, 2008, the Defendants again refused to produce supplemental discovery concerning the e-mail access on jurisdictional grounds. Attorney Welzer wrote:

> As we stated in our January 11, 2008 written response to Sidell's first request for documents, we reiterate that our clients generally object to Sidell's requests to the extent that: (1) they seek to impose discovery obligations which are broader than, or inconsistent with, those required by the JAMS Employment Arbitration Rules and Procedures and law; . . .(3) they are unduly burdensome, overbroad, oppressive or seek information which is neither relevant to the claims or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence . .
>
> ***
>
> Our clients are not producing documents in response to these requests.

(Emphasis added) (attached as Exhibit G).

Together with his letter, Attorney Welzer produced the Retainer Agreement between Sidell and an attorney concerning a completely

9

unrelated legal matter (to date, the Defendants have not produced the corresponding e-mail to which the agreement was attached).

In sum, during the Arbitration, the Defendants took a position wholly contrary to the one they now advance: namely, that the matter of the e-mails is outside the scope of the arbitration agreement and, thus, JAMS lacked authority over the issue.

F.    This Action

By Complaint dated May 8, 2008, Sidell commenced this action against the Defendants asserting claims based on violations of the Electronic Communications Protection Act (the "ECPA") (18 U.S.C. §2510), the Stored Communications Act (the "SCA") (18 U.S.C. §2701), Connecticut's Wiretapping and Electronic Surveillance statute (General Statute §54-41, *et seq.*), Connecticut General Statute §31-48d, and Sidell's common law right to privacy. As set forth in the detailed Complaint, the factual allegations concern the unauthorized and illegal access to Sidell's personal Yahoo account; communications he sent from and received at his home after his termination. None of the allegations concern Sidell's employment or agreement to arbitrate. Indeed, the filing of this action and the claims asserted herein are consistent with the Defendants' previous position that Sidell's privacy claims were outside of the agreement to arbitrate.

## II. MOTION TO COMPEL ARBITRATION: LAW AND ARGUMENT

### A. Legal Standard

Contrary to Defendants' arguments, the threshold issue about whether a dispute is subject to an agreement to arbitrate is for <u>the Court</u> to decide. <u>JLM Industries v. Stolt-Neilsen, SA</u>, 387 F.3d 163, 171 (2nd Cir. 2004). "A disagreement about whether an arbitration clause ... applies to a particular type of controversy is for the court." <u>Id.</u> *quoting* <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). Thus, it is for this Court to decide whether Sidell's claims are subject to arbitration based on the terms of the Employment Agreement.

In considering a motion to compel arbitration under the Federal Arbitration Act, courts employ a two-step inquiry. First, the Court should determine whether the parties agreed to arbitrate the dispute in question. <u>Mitsubishi Motors Cop. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 628, 105 S.Ct. 3346 (1985). This involves two considerations "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement." <u>Id.</u>

In deciding whether claims are arbitrable, courts will compel arbitration:

> unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. These are rules of construction, however, and what we construe is a contract. <u>Accordingly federal law does not require parties to arbitrate when they have not agreed to do so.</u>

<u>Collins & Aikman Products Co. v. Building Systems, Inc.</u>, 58 F. 3d 16, 19 (2nd Cir. 1995) (Citations omitted). (Emphasis added).

Still, it remains the case that arbitration "is a matter of consent, not coercion." <u>JLM Industries v. Stolt-Neilsen, SA</u>, supra, 387 F.3d at 171 (*quoting* <u>Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ.</u>, 489 U.S. 468, 479, 109 S.Ct. 1248 (1989). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." <u>Multi-Financial Sec. Corp. v. King</u>, 386 F.3d 1364, 1367 (11th Cir. 2004) (*citing* <u>AT & T Techs., Inc. v. Communications Workers of Am.</u>, 475 U.S. 643, 648, 106 S.Ct. 1415 (1986)).

Moreover, if some claims are not arbitrable, while others are, then courts will sever those claims subject to arbitration from those adjudicable in court. <u>Collins & Aikman Products Co. v. Building Systems, Inc.</u>, supra, 58 F. 3d at 20. In determining whether a particular claim falls within the scope of the parties' arbitration agreement, courts focus on the allegations in the complaint rather than the legal causes of action asserted. <u>Id.</u> "[C]laims that present no question involving construction of the contract, and no questions in respect of the parties' rights and obligations under it are beyond the scope of the arbitration agreement." <u>Id.</u> at 23.

Although doubts regarding the scope of arbitration should be resolved in favor of arbitration, "they should not be so resolved at the expense of a reasonable reading of the Agreement, in light of the understanding of the parties at the time that they entered into the

12

employment contract." Cronas v. Willis Group Holdings, LTD, 2007 WL
2739769 (S.D.N.Y.)[4] *quoting* Mehler v. Terminix Int'l Co. L.P., 205 F.3d 44, 49
(2d Cir. 2000).

In the present action, the Defendants' access to Sidell's personal e-
mails, sent to and from his home after his termination, clearly do not
involve "significant aspects" of his employment and hence Sidell's claims
are not arbitrable.

### B. By Defendants' Own Admission, Sidell's Post-termination Privacy Claims Are Beyond the Scope of the Agreement to Arbitrate

#### 1. Defendants' Admission of Non-Arbitrability Is Binding

Prior to any analysis of arbitrability, as a threshold issue, the Court
should determine that the Defendants' repeated assertions that Sidell's e-
mail claims were not subject to arbitration are binding judicial admissions
that should be enforced by the Court. The Defendants clearly and
unambiguously stated that Sidell's privacy claims are "outside of the
Sidell-SSI agreement to arbitrate", the Defendants "did not consent to
arbitrate them," and "as a result, JAMS lacks jurisdiction." (See Exhibits E
and G).

This Court has broad discretion to treat the statements of counsel in
a representative capacity as "client admissions." In re Ridgway 325 B.R.
65, 67 (Bkrtcy. D. Conn. 2005). "A court can appropriately treat statements
in briefs as binding judicial admissions." Purgess v. Sharrock 33 F.3d 134,
144 (2nd Cir. 1994). Similarly, this Court should treat the Defendants'

---

[4] All decisions that are not officially reported are submitted herewith as Exhibit H.

repeated statements in the Arbitration that Sidell's privacy claims are non-arbitrable as binding, enforceable judicial admissions.

### 2. Defendants' Assertions that Sidell's Privacy Claims are Not Arbitrable Are Correct.

The Defendants' admission that the claims in this action fall outside the scope of the agreement to arbitrate, are, in fact, correct. In the employment context, courts have examined whether post-termination conduct is subject to arbitration and held that where the employee's work performance is not relevant to the claims, the claims are not arbitrable.

In Fleck v. E.F. Hutton, 891 F.2d 1047, 1052 (2nd Cir. 1989), cited by the Defendants, which is factually dissimilar to this action, the Court of Appeals found that the timing of the tort is relevant in determining whether the tort arose out of the employment or termination. In that case, the Court determined that certain post-termination statements were subject to arbitration because the statements concerned the employee's performance and the post-termination statements were required by New York Stock Exchange ("NYSE") rules (defendant was complying with notice requirements as to employee's departure, and their obligation to do so was foreseeable when employee signed his employment contract). Id. In so doing, however, the Court held that the employer's statement to the broker's former clients that were not relevant to his performance were not arbitrable under the NYSE arbitration rules. Id. at 1053. The Court then remanded the case to the district court with instructions to "order arbitration of claims that involve significant aspects of the employment

14

relationship i.e. those claims for which resolution 'depends upon evaluation of a party's performance ... during the time of the contractual relationship." Id. (Citations omitted.) (Emphasis added.)

By its terms, the Employment Agreement requires arbitration of only those claims arising out of or relating to the Agreement or Sidell's employment. Moreover, it is inconceivable that Sidell or his employers, in executing the Employment Agreement, intended to arbitrate disputes relating to the unauthorized access to Sidell's personal e-mails sent after his termination. This tortured reading of the Employment Agreement is unreasonable and should be rejected. See Cronas v. Willis Group Holdings, LTD, supra, 2007 WL 2739769 (S.D.N.Y.). Because the claims in action are solely confined to the Defendants' invasion of Sidell's privacy after his termination, specifically the interception of his personal e-mails that were sent from and/or received at home on his personal e-mail account, Sidell's claims do not "involve significant aspects of the employment relationship" or Sidell's performance during the contractual relationship and they are not arbitrable. Fleck v. E.F. Hutton, supra.

Indeed, there is no need for the Court to evaluate or "look back" at Sidell's employment with LawCash in determining the claims before it. See Neely v. Bectel, 2008 WL 2120085 (M.D. Ala.). In Neely, the plaintiff was involved in an on-going arbitration with his former employer claiming that he was the victim of age and disability discrimination. He then brought suit in federal court claiming retaliation and failure to hire based on his former

employer's failure to hire him for numerous open positions. The Court examined the three cases relied by Defendants (see §3 below) and found them inapplicable to Neely's post-termination claims because the claims did not require the Court to "look back" at his employment which was subject to arbitration. Id.

In the present action, the only connection to Sidell's employment and the arbitration is that the perpetrators include his former employers and their lawyers, and the wrongdoing was disclosed during Arbitration. No analysis of Sidell's work performance is required. As such, Sidell's claims are not arbitrable.

### 3. Defendants' Citations Are Distinguishable

The cases cited by Defendants in support of their Motion either support Sidell's position or are distinguishable based on their facts and/or arbitration language. (Motion to Compel, pp. 14-15). See Hobley v. Kentucky Fried Chicken, 2004 WL 3257063 (post-employment report of a false accusation of theft during employment was arbitable because facts *arose from employment relationship*); Aspero v. Shearson Am. Express, Inc. 768 F. 2d 106, 109 (6th Cir. 1985) (post-termination claim of defamation was arbitable because claim *depended on evaluation of work performance*); and, Morgan v. Smith Barney, Harris Upham & Co. 729 F. 2d 1163, 1165-68 (8th Cir. 1984) (similar to Fleck, supra, held that required post-employment reports to brokerage agencies were arbitrable because they relied on *evaluation of plaintiff's employment*). In each of the cited cases,

the courts found that the post-termination tort claims were arbitrable because the claims or conduct at issue required evaluation of the plaintiff's work performance. Accordingly, these cases are inapplicable to Sidell's claims in this action, which require no evaluation of his work performance.

The Defendants' reliance on <u>Swenson v. Management Recruiters International, Inc.,</u> 858 F. 2d 1304 (8th Cir. 1988) is equally misplaced because that case involved a much broader arbitration provision. In <u>Swenson</u>, the Court of Appeals held that claims arising from the opening of a former employee's mail, which had been sent to the former employer, were arbitrable. However, the Defendants neglected to inform this Court that the arbitration clause at issue in <u>Swenson</u> provided for arbitration of "all controversies, claims, disputes and matters in question arising out of, or relating to, this Agreement or the breach thereof, <u>or the relations between the parties.</u>" <u>Id.</u> at 1310 (emphasis added). This is much broader than Sidell's arbitration clause, which contains no requirement that the parties arbitrate "all disputes" between them.

### 4. There Is No Intertwining of Issues

Despite Defendants' strenuous efforts to link the claims in this action and the Arbitration, there is no "intertwining of issues" as Defendants claim, nor does Sidell seek duplicative relief in both forums (Motion pp. 4, 14). Indeed, Sidell commenced this action after Defendants repeatedly denied that JAMS had jurisdiction over Sidell's e-mail claims. Moreover, the Defendants' arguments that Sidell's privacy claims are subject to

arbitration would transform the parties' agreement to arbitrate those disputes relating to Sidell's employment or Employment Agreement into one requiring arbitration of any and all disputes between the parties.

In fact, Sidell's termination provides a clear line of demarcation between the conduct at issue in the Arbitration and the conduct at issue in this action. See Fleck v. E.F. Hutton, supra, 891 F.2d at 1047. The e-mails at issue were not sent to or from Sidell's former employer. Rather, they were sent to/from Sidell's home and illegally intercepted by Sidell's former employer. Sidell's privacy claims stand apart from his employment claims in the Arbitration and can be maintained without reference to the Employment Agreement. See Bradford v. Robert Peltier Nissan Pontiac, 2007 WL 865685 (E.D. Tex.) (holding that although the alleged illegal wiretapping occurred while plaintiff was negotiating the terms of the contract containing the arbitration clause, the facts relating to the wiretapping claim were not intertwined with his arbitrable contract claims. Because the wiretapping claims could be maintained without reference to the contract, they "were not within the scope of the arbitration agreement.")

The only 'duplicative relief' sought by Sidell is the disqualification of defense counsel and even that relief is based on different, though equally compelling legal arguments. Disqualification in the Arbitration is based primarily on defense counsel's, Zuckerman, Gore & Brandeis ("ZGB"), failure to immediately return Sidell's privileged attorney-client

communications in violation of New York's ethical obligations. In contrast, the Motion to Disqualify in this action, while based in part on ZGB's prior unethical behavior, primarily focuses on their role as necessary witnesses and potential defendants. The only overlapping relief relates to the brazen, improper conduct of defense counsel, ZGB.

The fact that the Defendants sought to use the information they illegally gleaned from Sidell's personal Yahoo account to their advantage in the Arbitration does not make those actions subject to arbitration. In fact, it should be assumed that Defendants, particularly Yucht, and others reviewed many more e-mails than the limited redacted, privileged e-mails divulged to date. The Retainer Agreement and the vast majority of Sidell's personal e-mails at issue in this case have no connection to these Defendants or the Arbitration. Sidell's privacy claims in this action are legally and factually independent of the Arbitration; they stand on their own without reference to Sidell's employment or the Employment Agreement. Accordingly, the claims in this action are not subject to arbitration.

## C. The Critical Public Policy Issues in This Action Should Not Be Decided In Arbitration

Sidell's claims in this action concern vital public policy issues protected by federal and state statutes that should be resolved in federal court and not arbitration. Courts will refuse to compel arbitration where there are significant public policy issues at stake. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S.Ct. 1647 (1991). Congressional intent to override arbitration is discoverable in the text of

the statute, the legislative history or the statute's underlying purpose. Id. The ECPA, the SCA and Connecticut's Wiretapping Statute[5] all address broad, important public policies that should be addressed in federal court. All three statutes concern criminal, constitutional and privacy issues which this Court addresses on a frequent basis.

The essential purpose of the federal wiretapping statute, of which the ECPA is a part, is to combine a limited and carefully articulated grant of power to intercept communications with an elaborate set of safeguards to deter abuse and to expunge its effects in the event that it should occur. In re Evans, 452 F.2d 1239, 1243 (DC Cir. 1971).

The goal of the 1968 Wiretap Law was to protect individual privacy. "Protection of privacy was the overriding congressional concern of the act." United States Code Services, Title 18, p. 88. Lawmakers who drafted the act lamented that "privacy of communications is seriously jeopardized. No longer is it possible, in short, for each man to retreat into his home and be left alone." US Code Congressional and Administrative News, 99, p. 2154. Consequently, the ECPA was designed to "assure the privacy of oral and wire communications" by prohibiting "all wiretapping and electronic surveillance by persons other than duly authorized law enforcement officers." US Code Congressional and Administrative News, 99, pg. 2153.

The amendment of the Wiretapping Statute in 1986 with the ECPA was intended to adapt to new technological developments. The authors of

---

[5] The Connecticut legislature modeled the Connecticut Wiretap Act on the Federal Wiretap Act and hence the same public policy arguments apply. See Chance v. Cundy, 2004 WL1497547 (D. Conn., Hall, J.) *citing* State v. Martin, 171 Conn. 524, 543 (1976).

the amendment asserted that "the law must advance with the technology to ensure the continued vitality of the Fourth Amendment." US Code Congressional and Administrative News, 99, p. 3559.

Similar important public policies reinforce the SCA. The purpose of the SCA was, in part, to protect privacy interests in personal and proprietary information and to address "the growing problem of unauthorized persons deliberately gaining access to, and sometimes tampering with, electronic or wire communications that are not intended to be available to the public." Kaufman v. Nest Seekers, LLC, 2006 WL 2807177, at *4 (S.D.N.Y.). The SCA was also designed to create a civil cause of action against computer hackers and electronic trespassers. Id., 2006 WL 2807177 at *4; See also State Wide Photocopy, Corp. V. Tokai Financial Service, Inc., 909 F.Supp. 137, 145 (S.D.N.Y. 1995).

Both the ECPA (18 U.S.C. §2511) and the SCA (18 U.S.C. §701) create a statutory framework for protecting the privacy of individuals using electronic communications, including e-mail, and provide civil and criminal penalties for violations of those statutes. Both statutes provide exceptions for criminal liability, including good faith reliance on court orders by law enforcement officials as well as private citizens. Accordingly, the judicial oversight attendant in the issuance of subpoenas, search warrants and other court orders as provided for in these statutes support this Court maintaining jurisdiction over Sidell's claims for civil violations of the same statutes. Moreover, given the dearth of caselaw interpreting the ECPA and

the SCA, public policy supports judicial interpretation and application of the statutes. Therefore, based on the vital public policy issues raised in Sidell's claims, the Court should retain jurisdiction and deny the Motion to Compel.

## D. The Defendants Have Waived Any Right to Arbitrate These Claims by Virtue of Their Actions in the Arbitration

Even if claims concerning Sidell's personal, post-termination e-mails were subject to arbitration, and their statements to the contrary are not binding judicial admissions, the Defendants have waived their rights to assert this defense. Defendants' repeated statements to the Arbitrator and Sidell that Sidell's claims were "outside of the Sidell-SSI agreement to arbitrate," that Defendants "did not consent to" arbitration and JAMS "lacks jurisdiction" constitute a binding waiver of any rights in arbitration of the claims.

"Like contract rights generally, a right to arbitration may be modified, waived or abandoned." Sherrill v. Grayco Builders, Inc., 64 N.Y. 261, 272 (1985). Under New York law[6], the right to rely on agreement to arbitrate may be waived by a defendant as well as by a plaintiff. Board of Ed. of Roosevelt Union Free School Dist. v. Roosevelt Administrators Ass'n, 409 N.Y.S.2d 412 (2nd Dept. 1978). Either party may abandon arbitration as a method of settling their differences, and may waive or destroy by his conduct his right to insist upon arbitration. United Paper Machinery Corp.

---

[6] New York law applies to the waiver issue because the Arbitration is in New York and the Employment Agreement ¶ 18 provides that it will be governed by, construed and enforced in accordance with New York law.

v. DiCarlo, 241 N.Y.S.2d 711, (4th Dept. 1963) motion denied 14 N.Y.2d 687, 249 N.Y.S.2d 883, 198 N.E.2d 912, affirmed 14 N.Y.2d 814, 251 N.Y.S.2d 469, 200 N.E.2d 453. An agreement to arbitrate is not irrevocable, and both parties may abandon a method of settling differences and, under some circumstances, one party may waive or destroy by his conduct his right to insist upon arbitration. Zuber v. Commodore Pharmacy, Inc., (2nd Dept. 1965) 262 N.Y.S.2d 155. (2nd Sept., 1965).

Courts analyzing arbitration rights have found that it is similar to a contract right and may be waived. In National Foundation for Cancer Research v. A.G. Edwards & Sons, Inc., 821 F.2d 772, 774 (CADC, 1987), the Court of Appeals found that:

> the question of whether there has been waiver in the arbitration agreement context should be analyzed in much the same way as in any other contractual context. The essential question is whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right.

In Sherrill v. Grayco Builders, Inc., 64 N.Y.261, 272 (1985), the court determined that Gray, a party, by his actions "manifested a preference 'clearly inconsistent with his later claims that the parties were obligated to settle their differences by arbitration . . .'" (Citations omitted). The court then affirmed the lower court's determination that "it is enough that the totality presented here is so conclusively waived that it "may not be unilaterally recalled." Id.

In Raymond James Financial Services, Inc. v. Sadukas 896 So. 2d 707 (Fla. 2005), the Florida Supreme Court analyzed whether Raymond

James' waived its right to arbitrate by their refusal to do so in arbitration. Sadukas then filed suit and Raymond James followed with a motion to stay litigation and to compel arbitration. The Court held that arbitration is a "valuable right" that "must be safeguarded by a party who seeks to rely upon that right and the party must not act inconsistently with the right." Id., 896 So. 2d at 711. The Court then affirmed the underlying court's determination that Raymond James, by its actions in the arbitration, had waived its right to arbitrate by "repeatedly asserting that Sadukas and Stesal, LLC had no right to arbitrate. . ." Id. at 709.

The Defendants simply cannot credibly claim that Sidell's privacy claims in this Action are subject to arbitration. By their conduct and express words, the Defendants have waived their right to arbitrate Sidell's e-mail claims. The Defendants clearly and unambiguously stated that the claims in this action are "outside of the Sidell-SSI agreement to arbitrate" and the Defendants "did not consent to arbitrate them," and "as a result, JAMS lacks jurisdiction." (See Exhibits E and G). The Defendants have acted inconsistently with a position that such claims are arbitrable. Defendants' express waiver could not be clearer.

Moreover, as set forth above, in the Arbitration the Defendants consistently and repeatedly refused discovery on this issue and disputed JAMS' jurisdiction to decide the issue.[7] Indeed, the Defendants have flatly

---

[7] Although Sidell maintains that his privacy claims are not subject to Arbitration and as such the Arbitrator cannot award damages for post-termination violations of his privacy, Sidell has consistently asserted that he is entitled to the immediate return of all of his

24

refused to respond to Sidell's discovery requests, have ignored Arbitrator Miller's orders and have brazenly destroyed Sidell's e-mails, hoping the issue will go away. As such, the Defendants have manifested their intent to waive the right to arbitrate the issue. Sherrill v. Grayco Builders, Inc., supra, 64 N.Y. at 272.

While there is no legitimate basis to claim that Defendants' post-termination invasion of Sidell's privacy is subject to arbitration, if such claim ever did exist, it has been waived by the Defendants' manifest refusal of JAMS' jurisdiction over the issue. The Court should see through the Defendants' flip-flopping on the proper forum for Sidell's claims for what it is: the Defendants seek to deprive Sidell of any forum in which to pursue his claims. The Court should not countenance the brazen conduct of Defendants and their lawyers by giving any credence to the present motion; to do so would only reward Defendants for their bad conduct.

E.     The Defendants and Their Lawyers Have Irreparably Tainted Any Arbitration of This Issue

It is undisputed that the Defendants and their lawyers acquired and used Sidell's personal e-mails, including privileged attorney-client communications, and withheld them for several months, until after entry of the Protective Order in the Arbitration. They have also ignored the Arbitrator's orders on the issue and refused to return, or permit discovery on, any of Sidell's other personal e-mails, which they have illegally accessed. As a result of this unethical conduct, in clear violation of New

---

personal e-mails and is entitled to discovery on how the e-mails were accessed, by whom and to what use they were put.

York ethical standards, Sidell has sought to disqualify ZGB as counsel in the Arbitration and in this Action.[8] However, even if ZGB is disqualified in the Arbitration, their conduct and that of the Defendants has irreparably tainted the Arbitration proceedings concerning the unauthorized access to Sidell's e-mails. Indeed, their blatant flip-flopping on the issue of arbitrability reveals that the sole purpose of the Defendants' machinations is to prevent Sidell's privacy claims from seeing the light of day.

Even without ZGB as their counsel, at a minimum, the Defendants learned of Sidell's legal strategy from their illegal access to his attorney-client communications and have used them to advantage in the Arbitration. Defendants have profited from their misconduct and cast a pall on the future of the Arbitration proceedings; indeed, to date, Sidell has not had a full accounting of how, when or whom has accessed his personal e-mails or how many and which e-mails were accessed. This forum is the only setting that can end the Defendants' stonewalling on this issue.

F.    There are Potential Defendants Who have No Claim to Arbitration

In an effort to limit their exposure, particularly as to the pending Motion to Disqualify, Defendants and their counsel have painted Yucht as the "lone gunman," claiming that he acted on his own and without involvement or direction of counsel or anyone else. (See Defendants' Opposition to Plaintiff's Motion to Disqualify, dated July 31, 2008, p. 5).

---

[8] Incredibly, the Defendants seek to use their own bad conduct and that of ZGB to create an "intertwining of issues" between the Arbitration and this action based on Sidell's efforts to disqualify ZGB as counsel in both forums.

However, it is clear that the Defendants and their counsel obtained, used and concealed their access to Sidell's personal e-mails for several months. As set forth in the pending Motion to Disqualify, ZGB and lawyers at their firm are potential defendants in this action and they have no claim to Arbitration. Further, there are other potential defendants, unknown to Sidell at this time, who may have received Sidell's personal e-mails from the Defendants and/or ZGB, and Sidell's claims in this action should remain in this forum so that he can conduct discovery and assert any claims against said parties.

## III. MOTION TO DISMISS: LAW AND ARGUMENT

### A. Legal Standard

In a motion to dismiss pursuant to Rule 12(b)(6), the court "takes well-pleaded facts as true and draws all reasonable inferences in favor of plaintiff," and "merely assess[es] the legal feasibility of the complaint." See A Slice of Pie Prods., LLC v. Wayans Bros. Entm't, 392 F.Supp.2d 297, 309 (D.Conn. 2005) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

However, the long-standing principle recently restated in Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), that a court should not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his or her claim which would entitle the plaintiff to relief," is no longer the appropriate standard. See Bell Atlantic Corp. v. Twombly, --- U .S. ----, 127 S.Ct. 1955,

1960, 1964-65 (2007) (holding that a plaintiff must provide the grounds on which he is entitled to relief beyond mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do"). The Second Circuit interpreted the holding in Bell Atlantic and adopted a "plausibility standard," which "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir.2007). As set forth below, the detailed factual allegations in Sidell's Complaint clearly demonstrate that his claims are plausible and legally feasible.

### B. The Complaint Contains the Necessary Legal Elements and Asserts the Requisite Factual Support for the Claims Therein

In their Motion, the Defendants argue in the alternative that the Complaint should be dismissed.[9] Based on the brevity of legal and factual support for dismissal, it appears the Defendants give little merit to their arguments. These arguments should be rejected because each raises factual issues that are not appropriate for a Motion to Dismiss. Sidell's statutory claims are plausible, legally feasible and contain the requisite factual support.

### 1. ECPA Claims (First Cause of Action)

The Defendants assert that Sidell's ECPA claims are only conclusory and that Sidell may have claims under the ECPA or the SCA, but not both.

---

[9] Significantly, the Defendants have not addressed Sidell's common law invasion of privacy claim so, even if the Court were to dismiss Sidell's statutory claims, this claim would remain.

The ECPA provides a private right of action against one who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). To state a claim for violation of the ECPA, a plaintiff must allege the following five elements: that a defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device. In re Pharmatrak, Inc., 329 F.3d 9, 18 (1st Cir. 2003); citing 18 U.S.C. § 2511(1)(a) and 18 U.S.C. § 2520 (providing a private right of action).

Sidell has properly alleged the above elements in his Complaint.[10] (See Complaint ¶ 49, ¶50). Further, FRCP 8(d)(2) explicitly provides for pleading in the alternative, stating that a party may assert as many separate claims as the party has regardless of consistency. Accordingly, the Court should deny Defendants' arguments to dismiss Sidell's ECPA claims.

## 2.    SCA Claims (Second Cause of Action)

The SCA provides civil liability for one who "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or 2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters or prevents

---

[10] In the event that the Court requires Sidell to allege that the intercepted communications were "in transit" and determines that the present allegations do not permit such an interpretation, Sidell respectfully requests permission to amend the allegations supporting his ECPA claims to specifically allege "in transit" interception.

authorized access to a wire or electronic communication while it is in electronic storage in such system." 18 U.S.C. § 2701(a).

The Defendants contend that the Complaint implies that they were 'authorized' to access Sidell's account and as such, Sidell's SCA claims should be dismissed. To the contrary, the Complaint (¶¶ 25, 62, and 64) explicitly alleges that the Defendants accessed Sidell's personal account without authorization to do so. Moreover, the precise manner and method by which the Defendants accessed Sidell's personal Yahoo account, whether Sidell somehow authorized them to do so, and the scope of any such authorization are issues of fact that must remain for discovery and, if appropriate, summary judgment. It is enough that Sidell has properly alleged the elements for violations of the SCA and provided the requisite factual support for the claimed violations, which complies with the Second Circuit's "plausibility standard." Iqbal v. Hasty, supra.

### 3. Connecticut Wiretapping Claims (Third Cause of Action)

The Defendants claim that Connecticut's Wiretapping statute only applies to communications transmitted by telephone or telegraph, however, they cite no authority for this proposition. Moreover, the limited cases interpreting the statute note that it is based on its federal counterpart, which clearly applies to electronic communications. See Massaro v. Allington Fire District, 2003 WL 23511732 (D. Conn.); In re State Police Litig., 888 F.Supp. 1235, 1269 (D.Conn. 1995) ("the State Wiretap Act requires proof of the same essential elements as [the federal act], and ...

should be interpreted similarly"). Discovery is needed to establish the means of transmission and interception, and Defendants cannot demonstrate that the e-mails were not sent over phone lines.

### 4. Connecticut General Statute §31-48d (Fourth Cause of Action)

The Defendants assert that General Statute §31-48d, which regulates monitoring of employees, including electronic monitoring, in the workplace does not apply to post-termination electronic monitoring. Again the Defendants assert no authority for this position. In addition, it is uncertain when the Defendants began monitoring Sidell's personal e-mails and the basis for their claimed authority to do so. Nevertheless, this claim, which requires discovery, has been properly pled with the requisite factual support and the arguments to dismiss should be denied.

## IV. CONCLUSION

For all of the foregoing reasons, the Court should deny the Motion to Compel. As the Defendants vigorously asserted in the Arbitration, the parties did not agree to arbitrate the post-employment invasion of Sidell's personal e-mail account. Further, Sidell's claims involve important public policy considerations that should be resolved in federal court and not arbitration. Moreover, even if such claims were arbitrable, which they are not, the Defendants have clearly waived arbitrability by their conduct in the Arbitration. The obvious purpose of the Defendants' flip-flopping on this issue is to attempt to deprive Sidell of any forum to assert his privacy claims. Finally, the arguments of Defendants' Motion to Dismiss all fail

because they assert issues of fact and ignore the Complaint, which properly asserts the requisite legal elements with supporting factual allegations.

THE PLAINTIFF

By: _____
David A. Slossberg [ct13116]
Russell A. Green [ct14976]
HURWITZ, SAGARIN, SLOSSBERG
& KNUFF, LLC
147 North Broad Street
Milford, CT 06460-0112
Telephone: 203-877-8000
Facsimile: 203-878-9800
Juris No. 26616

## CERTIFICATE OF SERVICE

This is to certify that on October 29, 2008 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to all parties that are unable to accept electronic filing. Parties may access this filing through the Court's electronic system.

**Russell A. Green**