UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------------- X
                                                              :
SCOTT SIDELL,                                                 :    3:08CV710 (VLB)
                                                              :
                    Plaintiff,                                :
                                                              :
v.                                                            :
                                                              :
STRUCTURED SETTLEMENT                                         :
INVESTMENTS, LP, PLAINTIFF FUNDING                            :
HOLDING, INC.                                                 :
(D/B/A "LAWCASH"), DENNIS SHIELDS,                            :
HARVEY HIRSCHFELD, RICHARD PALMA,                             :
and SCOTT YUCHT,                                              :
                                                              :    November 19, 2008
                    Defendants.                               :
------------------------------------------------------------- -X

### REPLY BRIEF IN FURTHER SUPPORT OF
### DEFENDANTS' MOTION TO COMPEL ARBITRATION,
### OR ALTERNATIVELY, TO DISMISS

Sidell's thirty-two page Opposition borrows extensively from briefs Sidell has filed in the arbitration pending for over a year in JAMS Dispute Resolution (the "Arbitration"). Consequently, the result here is no different than in those prior briefs: arbitration should be compelled.

At its core, Sidell's Opposition suggests that this dispute, which concerns e-mails that his employer found on an unassigned computer Sidell left open in the workplace, should be carved-out of the Arbitration for three reasons. First, Sidell weakly asserts that these claims do not involve "significant aspects" of the employment relationship. (Opp. pp. 1- 2, 13). However, Sidell's claims are inextricably tied to his employment; indeed, they are a reaction to his former employer's counter-claim in the Arbitration

ORAL ARGUMENT REQUESTED

against Sidell alleging Sidell's misuse of a company computer to steal confidential data. Second, Sidell distorts fact and law by asserting that defendants have waived their right to mandatory arbitration because of supposed "judicial admissions." (Opp., pp. 1-2, 13-14, 22-25). In reality, Sidell is referring to nothing more than a single letter from defense counsel to Sidell's previous counsel objecting to Sidell's interrogatories served in the Arbitration. That letter pre-dates Sidell's claim in this proceeding and so cannot serve as an admission about that claim. Finally, Sidell claims that some undefined "important public policies" militate against enforcing Sidell's agreement to arbitrate. However, Sidell cannot cite to any actual policy or legislative intent to keep these claims out of Arbitration. In fact, public policy, including the policy favoring arbitration of disputes, the policy of judicial economy, the policy of not splitting lawsuits, as well as the policy of honoring protective orders, all favor Arbitration.

I.

### SIDELL'S CLAIMS ARE INEXTRICABLY TIED TO HIS EMPLOYMENT AND THE ARBITRATION

A. The Arbitrator Should Decide Arbitrability

In a threshold attempt to extricate his claim from Arbitration, Sidell asserts that "[a] disagreement about whether an arbitration clause . . . applies to a particular type of controversy is for the court." (Opp. at 11, quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)). However, Sidell omits the critical holding in *Howsam*, which states that where -- as here -- the parties agreed to have

2

arbitrability decided by an arbitrator, the arbitrator should decide arbitrability: "the 'question of arbitrability,' is 'an issue for judicial determination *[u]nless the parties* clearly and unmistakably *provide otherwise*.' *Howsam*, 537 U.S. at 83 (emphasis added), citing *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

Sidell's only answer to this rule is to ignore it. Sidell fails to address controlling precedent, *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205 (2d Cir. 2005). In *Contec*, the Second Circuit held that the arbitrator has the power to rule on her own jurisdiction where the "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability." *Id.* at 208. As with the AAA rules in *Contec*, JAMS Rule 11(c) provide that the question of arbitrability is for the Arbitrator.[1]

*JLM Industries* is distinguishable. (Opp. at 11). The agreement in *JLM Industries v. Stolt-Neilsen, SA*, 387 F.3d 163 (2d Cir. 2004) did not specify the arbitrable body or any set of rules governing arbitration. As a result, the Court could not find any intent to have arbitrability determined by the Arbitrator. *Id.* at 167. By contrast, Sidell's acceptance of JAMS rules makes it clear that arbitrability is to be decided by the arbitrator.

B.  Sidell Admits His Claims Arise From His Employment

Sidell admits that his emails were "concerning his termination" (Opp. at 3). Sidell admits that his emails discussed "employment claims against

---

[1] Ex. G to John Crossman Declaration at pp. 6-7. Sidell's arbitration agreement provides for binding arbitration in accordance with the Rules of JAMS. (Opp. Ex. A, ¶ 18).

3

some or all of the Defendants." (Opp. at 4). Sidell admits that in some of the e-mails, "Sidell refuted in detail the allegations made by his employers." (Opp. at 3). Moreover, Sidell admits that the e-mails were accessed by his employer's chief information officer, when, after Sidell's termination meeting, Sidell's employer had "searched the computer Sidell had been using at work." (Opp. at 3).

However, Sidell conveniently omits the fact that upon such examination, it was determined that *immediately* after his firing, Sidell had stolen confidential company information from the workplace by emailing his employer's confidential database from himself to himself, as an attachment to an email that Sidell sent from the office to himself in his Yahoo account, using the company's computer. (Ex. F to Opp.). Sidell also omits the fact that he left the vehicle for his corporate theft -- his Yahoo email account -- open and running on an unassigned workplace computer, available for anyone in the workplace to see. (Ex. E to Crossman Decl., at ¶¶ 8-13). This is the subject of counter-claims against Sidell in the Arbitration. (Complaint at ¶ 40).

To feign distance from the employment relationship, Sidell claims that "other e-mails were personal, private communications with relatives, friends and associates." (Opp. at 4). Sidell is flat-out wrong. No such e-mails were obtained by SSI. (Ex. E to Crossman Decl., at ¶¶ 8-10). Likewise, his newest attorneys are being deliberately ignorant in claiming that only "limited," "redacted" emails were returned to Sidell. (Opp. at 5).

In fact, Sidell and his attorneys know that <u>all</u> of the emails were produced to Sidell in the Arbitration at the direction of the Arbitrator.[2] In the February 7 letter attached to Sidell's Opposition, defense counsel made unmistakably clear -- nine months ago -- that "[a]ll of these e-mails were already returned to you three weeks ago. Their production numbers are: SSI 0619-621, 622-626, 627-623 and 636-640." (Ex. C to Opp.).

C. <u>The Broad Arbitration Agreement Covers Sidell's Claims</u>

Sidell does not dispute that the present arbitration agreement is "broad," as defined by the cases in defendants' moving papers, in providing that:

> *Any* dispute, controversy, or claims <u>*arising out of or relating to*</u> this Agreement, or the breach, termination, or invalidity thereof, whether sounding in contract or tort, and whether arising out of any <u>*statute, or otherwise*</u>, shall be settled by binding arbitration in New York City in accordance with the Rules of JAMS or its successor entity.

Employment Agreement, ¶ 18 (emphasis added).

However, to try to finesse this aspect of the dispute from Arbitration, Sidell cites a handful of distinguishable cases. (Opp. at 14-15). The arbitration clause in *Fleck v. E.F. Hutton Group, Inc.*, 891 F.2d 1047, 1049 (2d Cir. 1989) was narrow, covering only claims "arising out" employment or termination instead of, as here, claims "arising out of or relating to..." *Id.* Furthermore, *Fleck* concerned whether NYSE Arbitration Rule 347

---

[2] As has been clear in the Arbitration for many months, counsel retained only copies of the non-attorney email transmissions through which Sidell stole the company's confidential database, and did so with the full knowledge of Sidell's then-attorney and the Arbitrator. Moreover, per the Arbitrator's Clarification of Arbitrator's Order #4, such retention was expressly permitted and expected by the Arbitrator.

5

applies to tort claims arising from statements his former employer made *three months* after Fleck was terminated. In giving guidance to the trial court on remand, the only claim the Court hinted to be non-arbitrable was an "unprovoked insult made by a former employer" that a former employee was a disbarred lawyer, which could not be said to "arise from employment just because the employment relationship was a 'but for' cause of the employer's dislike of the employee." *Id.* at 1053. *Fleck* criticized an earlier decision, stating that "insofar as it implied that no torts committed after employment ends are arbitrable, [it] missed the mark." *Id.* at 1052.

The second case discussed by Sidell, *Neely v. Bechtel Corp.*, 2008 WL 2120085, (M.D. Ala.), held that the plaintiff's discrimination claims based on a former employer's failure to hire him to a new position during the *three years* after his termination were nonarbitable where "[n]either the establishment nor the defense of any of [the claim's] elements necessarily requires an examination of" the former employee's employment. *Id.* at * 2. In the present case, however, defendants will defend claims upon the basis that the access was authorized, as it came on a workplace computer while in hot pursuit of Sidell's corporate theft. Similarly, Sidell must prove unauthorized access despite company policy concerning use of computers and the fact that he left the account open to view within the workplace.

Finally, in trying to distinguish *Swenson v. Management Recruiters Int'l, Inc.*, 858 F.2d 1304 (8th Cir. 1988)(Opp. at 17), Sidell omitted the lower court's holding, which was affirmed on appeal. The court held that the

"plaintiff's claims arising from the opening of the plaintiff's mail [were] claims that arose out of her employment as a manager," and were therefore within the scope of the arbitration clause. *Swenson v. CDI Corp.*, 670 F.Supp. 1438, 1440 (D. Minn. 1987).

## II.

## DEFENDANTS HAVE EMBRACED MANDATORY ARBITRATION

It was not until May 8, 2008, that Sidell identified and asserted a claim based on the emails -- albeit in the wrong forum of Federal Court. In their first pleading, defendants promptly moved to compel arbitration based upon the broad arbitration clause and binding precedent mandating the arbitration. From the moment Sidell put these claims at issue, defendants have asserted that they are subject to mandatory arbitration.

Sidell plays fast and loose with both the facts and law in representing incorrectly: that defendants "stated on the record" that the claims fall outside the Sidell-SSI agreement to arbitrate (Opp. at 1); "repeatedly denied that JAMS had jurisdiction" (Opp. at 17); are "flip-flopping" (Opp. at 25-26); made "repeated assertions" and "binding judicial admissions" that Sidell's e-mail claims were not subject to arbitration (Opp. at 13, 22); and made "repeated statements to the Arbitrator" that Sidell's claims were outside of the agreement to arbitrate (Opp. at 22).

Noticeably, Sidell failed to attach any Arbitration pleadings, transcripts or the like to his Opposition. Instead, Sidell rests upon a distortion of a single letter sent to one of his prior attorneys. (Ex. E to

7

Opp.). In it, defense counsel raised entirely appropriate objections to Sidell's interrogatories. Interrogatories are not authorized under JAMS rules, and Sidell had not sought leave before serving them. Moreover, Sidell's interrogatories sought discovery concerning the emails at a time when Sidell was not yet asserting a claims based upon them. As a result, the interrogatories related to matters that were not yet before the Arbitrator or any court and, as a consequence, were outside of the Arbitrator's jurisdiction at the time. The defendants objected to responding to them in order to avoid needless delay and expenses on collateral issues.

Thus, while defendants objected to Sidell's interrogatories, defendants never objected to JAMS having jurisdiction over any issue. In addition, the contents of defense counsel's informal letter, lawyer to lawyer, on a discovery issue, do not constitute "binding judicial admissions" about a dispute that Sidell had not yet even commenced. (Opp. at 13-14). The cases Sidell cites concern judicial admissions within formal legal briefs. *In Re Ridgway*, 325 B.R. 65, 67 (D. Conn. 2005) (concerning defendant's statement in a motion for summary judgment); *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994)("[a] court can appropriately treat statements in briefs as binding judicial admissions").

Defendants have not waived their right to mandatory arbitration. (Opp. at 22-25). All of the cases cited by Sidell but one (discussed below), involve a party that was found to have waived arbitration because the party proceeded with litigation in some significant way before asserting a right to

arbitration.[3] In addition, *Raymond James Financial Services, Inc. v. Saldukas*, 896 So.2d 707, 709 (Fla. 2005) is distinguishable. There, in response to a demand for arbitration, Raymond James filed a motion with NYSE to dismiss the arbitration claim because "the controversy is not proper subject matter for arbitration." *Id.* at 708. After receiving Raymond James' motion, its adversary filed its claims in a state court. *Id.* at 709. The Court held that the Raymond James had waived its right to arbitrate by filing a motion asking the NYSE to dismiss the claim from arbitration and by repeatedly asserting that there was no right to arbitrate. *Id.*

### III.

### PUBLIC POLICY FAVORS ARBITRATION

Sidell cites *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). (Opp at 19-22). However, in *Gilmer*, the Supreme Court held that an discrimination claim was subject to compulsory arbitration. The Court held that: "Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer*, 500 U.S. at 26, citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). The burden is on the

---

[3] *Sherill v Grayco*, 64 N.Y.2d 261, 273-274, 486 N.Y.S.2d 159 (1985)(defendant "affirmatively sought the benefits of litigation" including obtaining pretrial disclosure); *Bd. of Ed. of Roosevelt Union Free School Dist. v. Roosevelt Administrators Ass'n*, 409 N.Y.S.2d 412, 414 (2d Dept. 1978)(party's counterclaim in litigation). *United Paper Machinery Corp. v. DiCarlo*, 241 N.Y.S.2d 711, 19 A.D.2d 143, 144 (4th Dept. 1963)(party filed a lawsuit in court); *Zuber v. Commodore Pharmacy, Inc.*, 24 A.D.2d 649 (2d Dept. 1965)(employer refused to institute arbitration proceeding).

plaintiff to show that Congress intended to preclude a waiver of a judicial forum for statutory claims. *Id.* citing *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 227, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). The Supreme Court instructed that when making these determinations, courts should keep in mind that "questions of arbitribility must be addressed with a healthy regard for the federal policy favoring arbitration." *Id.* (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)).

Like the plaintiff in *Gilmer*, Sidell has failed to satisfy his burden of showing that Congress or the Connecticut legislature intended to preclude arbitration of these claims. The general language cited by Sidell does not reflect any intent to preclude arbitration, and fails to show any "inherent conflict" between arbitration of claims and the policy behind the statutes.

Sidell admits that "doubts regarding the scope of arbitration should be resolved in favor of arbitration." (Opp. at 12). This is consistent with the law of the land, as the U.S. Supreme Court has long recognized and enforced a liberal federal policy favoring arbitration agreements. *Id.* at 24.

Respectfully submitted,

DEFENDANTS

By: /s/ John K. Crossman
John K. Crossman (ct25518)
ZUKERMAN GORE & BRANDEIS, LLP
875 Third Avenue
New York, New York 10022
Telephone: (212) 223-6700
Email: jcrossman@zgbllp.com

10

ROBINSON & COLE LLP
John F.X. Peloso, Jr. (ct02447)
Alexander D. Pencu (ct26759)
695 East Main Street
P.O. Box 10305
Stamford, Connecticut 06904-2305
Telephone: (203) 462-7500
Facsimile: (203) 462-7599
Email: <u>jpeloso@rc.com</u>
Email: <u>apencu@rc.com</u>

## CERTIFICATE OF SERVICE

I hereby certify that, on November 19, 2008, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access the foregoing through the Court's system.

/s/ John K. Crossman
John K. Crossman (ct25518)