UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SCOTT SIDELL | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:08-cv-00710 (VLB) |
| STRUCTURED SETTLEMENT | : | |
| INVESTMENTS, LP, PLAINTIFF | : | |
| FUNDING HOLDING, INC. (d/b/a | : | |
| "LAWCASH"), DENNIS SHIELDS, | : | |
| HARVEY HIRSHFELD, RICHARD PALMA | : | |
| and SCOTT YUCHT, | : | |
|     Defendants. | : | January 14, 2009 |

### MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION [Doc. #36]

Presently pending before the Court is the motion to compel arbitration and to dismiss filed by the defendants Structured Settlement Investments, LP (SSI) and related parties.[1] [Doc. #36] The defendants argue that a mandatory arbitration clause in the plaintiff Scott Sidell's employment contract with SSI [Doc. #35, Ex. B] requires him to arbitrate his claims against SSI, its agents, and successor PFH. The defendants further argue that the arbitrator should determine whether Sidell's claims are arbitrable. Sidell has filed a memorandum in opposition to the defendants' motion to compel arbitration [Doc. #55] advancing several agreements all challenging the arbitrabilty of the claims asserted by the plaintiff.

---

[1] The related parties are Plaintiff Funding Holding, Inc. (PFH) (which acquired and is doing business jointly with SSI as "LawCash") and their employees, PFH Chief Executive Officer Dennis Shields, PFH President Harvey Hirshfeld, PFH Chief Operations Officer Richard Palma, and SSI Chief Information Officer Scott Yucht.

1

Specifically, he challenges the claim that the parties agreed to arbitrate, contending that the Court should determine whether Sidell agreed to arbitrate. Sidell also argues that the defendants have waived their right to compel arbitration, Sidell's claims are not arbitrable, that Sidell's claims are outside the scope of the arbitration clause, and that any arbitration would be "tainted" by the facts underlying this case. For the reasons hereinafter set forth, the Court concludes that the parties have agreed to arbitrate arbitrabilty and therefore GRANTS the defendants' motion to compel arbitration.

## Facts

The following facts are relevant to the motion to compel arbitration and are not in dispute. On September 6, 2006, Sidell signed an employment agreement to be retained as Chief Executive Officer of SSI concurrent with SSI's acquisition by PFH. PFH and SSI then operated jointly as "LawCash." The Employment Agreement contains a choice of law provision in favor of New York law. It also includes an arbitration clause in which the parties designate JAMS as their arbitration forum. Specifically, it states: "[a]ny dispute, controversy, or claim arising out of or relating to this Agreement, or the breach, termination, or invalidity thereof whether sounding in contract or tort, and whether arising out of any statute or otherwise, shall be settled by binding arbitration in New York City in accordance with the Rules of JAMS or its successor entity." [Doc. #35, Ex. B].

JAMS Rule 11(c) states: "[j]urisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation, or scope of the

2

agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." [Doc. #35, Ex. G].

On August 24, 2007, LawCash terminated Sidell from his position as CEO of SSI. After being terminated, but before leaving the building, Sidell accessed his personal email through a company computer. On October 18, 2007, Sidell commenced arbitration with JAMS against all of the defendants except SSI Chief Information Officer Scott Yucht, alleging that they breached his employment agreement by terminating him without cause. During the course of the arbitration, Sidell learned that Yucht had accessed Sidell's personal email through the company computer Sidell had used, and that some of Sidell's emails relating to the arbitration were in the possession of the defendants. On May 8, 2008, Sidell brought suit in this court against all of the defendants in his arbitration and also against Yucht, alleging invasion of privacy and violations of 18 U.S.C. §2510 <u>inter alia</u> in connection with Yucht's alleged access and dissemination of Sidell's emails. [Doc. #1] The defendants then moved to compel Sidell to bring these claims before the JAMS arbitrator.

## Discussion

The threshold issue is whether the JAMS arbitrator or the Court should determine the arbitrability of Sidell's claims in this case. Sidell argues that the defendants have waived arbitrability in these claims, that his claims are not

3

arbitrable, that his claims do not relate to the employment agreement and are therefore outside the scope of the arbitration clause, and that the defendants' alleged use of Sidell's emails has "tainted" the arbitration. The defendants argue that all of these issues may be properly resolved by the JAMS arbitrator.

Sidell relies on <u>JLM Industries, Inc. v. Stolt-Nielsen SA</u>, 387 F.3d 163 (2d Cir. 2004) for the proposition that the Court should decide all of his challenges to arbitration. Specifically, Sidell argues that "a disagreement about whether an arbitration clause . . . applies to a particular type of controversy is for the Court." <u>Id.</u> at 171. <u>JLM Industries</u> is inapplicable, as the party seeking arbitration in that case did not argue that the parties had agreed to have the arbitrator determine her own jurisdiction, as the defendants in this case have by electing a forum whose rules specify that it resolves arbitrability disputes.

The more appropriate precedent is <u>Bell v. Cendant Corp.</u>, 293 F.3d 563 (2d Cir. 2002). In that case, the Second Circuit held that if there was "clear and unmistakable evidence" that the parties had agreed to arbitrate arbitrability, then threshold issues of jurisdiction or competence, including arguments, as in this case, that claims were not arbitrable or that arbitration had been waived, should be decided by the arbitrator. Therefore, the Court need not address any of Sidell's arguments against arbitration if it finds that the parties have agreed to arbitrate arbitrability.

The question of whether the parties agreed to arbitrate arbitrability is decided under state law. <u>Id.</u> The parties have not argued whether New York law or

4

**Connecticut law should guide the present inquiry, but the states' laws do not substantially differ on the "clear and unmistakable evidence" standard the Second Circuit applied in** <u>Bell</u> **using New York law.** <u>TES Franchising, LLC v. Loveman</u>**, Docket No. 3:04cv219, 2004 WL 885198 (D. Conn. Apr. 20, 2004).**

**The Court finds that there is clear and unmistakable evidence of intent to arbitrate arbitrability. In this case, there is both a broad arbitration clause and the incorporation by reference of the JAMS Rules. The Rules provide that arbitrators will determine their own authority. Either would suffice as evidence of the parties' intent to arbitrate arbitrability.** <u>Shaw Group, Inc. v. Triplefine International Corporation</u>**, 322 F.3d 115, 121-23 (2d Cir. 2003). Here, the parties do not contest the terms or validity of the arbitration clause. This is an issue that has routinely been referred to the competence of an arbitrator in this district.[2]**

**All of the defendants may invoke the arbitration clause against Sidell. He does not argue that any of the named defendants may not properly invoke the arbitration clause, although SSI is the only signatory to the Employment Agreement. The Court does note that Sidell asserts in his complaint that all of the defendants in this case were agents of or were acting in concert with the signatory to the agreement, and so all of the defendants are entitled rely on the arbitration agreement.** <u>Campaniello Imports, Inc. v. Saporiti Italia S.p.A.</u>**, 117 F.3d**

---

[2] <u>See, e.g.</u>, <u>TES Franchising, LLC v. Loveman</u>, 3:04cv219, 2004 WL 885198 (D. Conn. Apr. 20, 2004); <u>Congress Construction Co. v. Geer Woods, Inc.</u>, 3:05cv1665, 2005 WL 3657933 (D. Conn. Dec. 29, 2005); <u>Durant, Nichols, Houston, Hodgson & Cortese-Costa, PC v. Dupont</u>, 397 F.Supp.2d 386 (D. Conn. 2005); <u>Surgutneftegaz v. President and Fellows of Harvard College</u>, 167 Fed.Appx. 266 (2d. Cir. 2006).

655 (2d Cir. 1997). While Sidell argues that there may be other persons who have improperly obtained his emails who could not invoke the arbitration clause, he has not sued any other persons in this case nor has he asserted facts sufficient to establish that such person or persons may actually exist. Therefore, the JAMS arbitrator shall decide whether to exercise jurisdiction over Sidell's claims against the defendants in this action.

Accordingly, this case is dismissed in favor of the jurisdiction of the JAMS arbitrator now hearing Sidell's other claims against the defendants. Should the JAMS arbitrator decline to exercise jurisdiction over any of the claims in this case, Sidell may move to reopen this case within 30 days of her decision. The Clerk is directed to CLOSE this case.

IT IS SO ORDERED.

/s/
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: January 14, 2009.